OPINION OF THE COURT
Beatrice S. Burstein, J.
In this declaratory judgment action plaintiff seeks summary judgment, pursuant to CPLR 3212. The question raised, one of first impression in this State, is whether plaintiff’s campaign *705 activities while seeking reelection as union president are within the scope of a business exclusion of a liability policy provided by defendant. I find the exclusion does not apply.
The following facts are uncontroverted. During the relevant period encompassed by this action plaintiff had a full-time salaried position as president of a union local. As his term of office was reaching its conclusion, he ran for reelection, successfully. Opposing him for the position was one William Mason. After the election plaintiff sued William Mason for libel. William Mason counterclaimed, asserting a cause of action for libel against plaintiff. Both claims are based upon statements contained in each party’s campaign literature. Mr. Mason alleges in his counterclaim that he was "injured in his profession and reputation and has suffered great pain, suffering and mental anguish” for which he seeks compensatory and punitive damages.
Plaintiff’s request that defendant insurer defend and indemnify him on the counterclaim is based upon a homeowner’s insurance policy defendant issued to him. When defendant refused plaintiff commenced this action, seeking a declaration that he is entitled to coverage pursuant to the terms of the policy. Plaintiff relies upon that portion of the policy which affords coverage for personal injury, and defines personal injury as "injury arising out of * * * libel, slander or defamation of character”. Defendant’s refusal is predicated upon two portions of the policy. The first of these states that personal liability coverage does not apply "to bodily injury or property damage * * * [a]rising out of business pursuits of any insured”. The second states "Personal Injury Coverage * * * This coverage does not apply to: Injury arising out of the business of any insured”.[1]
Plaintiff contends that his activities during the course of the election had nothing to do with his employment as president of the union, but relate solely to his personal quest for reelection. In support of this position he presents a copy of that portion of the union’s constitution and bylaws which set forth the duties of the president. Defendant does not question the authenticity of this submission. The stated duties and obligations include appointing committees, filling vacancies among officers, designating counsel, countersigning vouchers, and calling meetings. As would be expected, the detailed *706 statement of the president’s functions does not include either running for reelection or campaigning for office.
Defendant relies upon the fact that plaintiff is a full-time salaried union officer, and that that is his profession and occupation, his livelihood. Defendant points out that in order to retain his livelihood plaintiff must seek reelection at the end of his term of office. It concludes that therefore the claim of libel arises directly out of plaintiff’s business, and comes within the exclusions quoted above.
In considering the scope of defendant’s duty to defend and indemnify plaintiff several well-settled principles of law provide guidelines. When the insurer contracts to defend against specified claims, as here, the obligation to defend is broader than the obligation to indemnify, and centers upon whether the complaint alleges facts which fall within the coverage of the policy. (Seaboard Sur. Co. v Gillette Co., 64 NY2d 304 [1984].) Any doubt in that regard is to be resolved against the insurer and in favor of the insured. (Brook Shopping Center v Liberty Mut. Ins. Co., 80 AD2d 292 [1st Dept 1981].) In determining the scope of the coverage, which involves interpreting and construing the policy, the intent of the parties is controlling. (McGrail v Equitable Life Assur. Socy., 292 NY 419 [1944].) If the language is ambiguous, extrinsic evidence may be employed to determine intent. (Reynolds v Commerce Fire Ins. Co., 47 NY 597 [1872].) If the determination of the parties’ intent depends upon the credibility of that extrinsic evidence or on a choice among reasonable inferences to be drawn from the extrinsic evidence, then that decision must be made by a jury. On the other hand, if the equivocality must be resolved without reference to extrinsic evidence, the issue to be determined is a question of law for the court. (Hartford Acc. & Indem. v Wesolowski, 33 NY2d 169, 172 [1973].) In either event, the burden of proving that the loss at issue is within the exclusion is upon the insurer. (Seaboard Sur. Co. v Gillette Co., supra; Facet Indus. v Wright, 62 NY2d 769 [1984].) This includes showing that the exclusion is specific and clear, for it cannot be extended by interpretation or implication; rather the exclusion must be given a narrow and strict construction, with the insurer demonstrating that there is no reasonable interpretation other than the one it asserts. (Seaboard Sur. Co. v Gillette Co., supra.)
In this case, resolution of this dispute can be made by this court. Neither party has contended there is any extrinsic evidence bearing on the parties’ intent when they entered into *707 the agreement. Moreover, defendant requested the court search the record and grant summary judgment in its favor, pursuant to CPLR 3212 (b).
In determining whether an activity is a business pursuit, courts generally have followed the two-pronged test set forth in Home Ins. Co. v Aurigemma (45 Misc 2d 875, 879 [Sup Ct, Westchester County 1965]). (For example, see, Shapiro v Glens Falls Ins. Co., 47 AD2d 856, affd on other grounds 39 NY2d 204 [1976] [reversing that portion of the decision below which held that the insured’s activity was a business pursuit]; Cooper v United States Fid. & Guar. Co., 82 AD2d 819 [2d Dept 1981]; Fadden v Cambridge Mut. Fire Ins. Co., 51 Misc 2d 858, affd on other grounds 27 AD2d 487 [3d Dept 1967]; Krings v Safeco Ins. Co., 6 Kan App 2d 391, 628 P2d 1071 [1981]; Annotation, Construction and Application of "Business Pursuits" Exclusion Provision in General Liability Policy, 48 ALR3d 1096 [1973].) In Home, the court stated that to constitute a business pursuit for purposes of exclusion under a liability policy, there must be two elements: continuity and a profit motive. As to the first, there must be a "customary engagement” or "stated occupation”. Applying the first element here I find plaintiff’s electioneering was neither his customary engagement nor his stated occupation, nor was it an activity in which he was continuously engaged.
Plaintiff’s duties as set forth in the union bylaws and constitution demonstrate that his activities in his position as union president are vastly different from the activities involved in campaigning for reelection. For plaintiff, the process of seeking reelection is akin to searching for employment, not performing his duties while employed. Carried to its logical end, to find that plaintiff’s electioneering was his customary engagement or stated occupation would indicate he was a perennial candidate, always running for office. Given his three-year term that is not the case. The above analysis supports a conclusion that plaintiff’s campaigning was not his customary engagement or stated occupation. Therefore, the court need not consider the other prong of the test, whether a profit motive was involved.
Further support for this result is found in the one reported opinion dealing directly with the applicability of the business exclusion clause to election campaigning, Burdge v Excelsior Ins. Co. (194 NJ Super 320, 476 A2d 880 [1984]). Research by the court has not disclosed any other determinations on point. (See, cases collected in Annotation, Construction and Applica *708 tion of "Business Pursuits” Exclusion Provision in General Liability Policy, 48 ALR3d 1096 [1973], and supplemental service.) In Burdge, the insured was being sued in the underlying action for personal injuries sustained when two vehicles collided. The plaintiffs in that suit claimed that the vision of the plaintiff driver had been "obstructed, distracted and impaired” by a campaign sign erected on behalf of and with the authorization of the insured, who was then a candidate for reelection to the office of County Clerk. Plaintiffs claimed the obstructing sign was responsible for the injuries the plaintiff driver sustained. The Appellate Division affirmed the declaratory judgment of the lower court in favor of the insured.
The rationale succinctly set forth in Burdge (supra) is persuasive: "We do not doubt that the actual conduct by the incumbent of the affairs and duties of the office of County Clerk would constitute business pursuits within the intendment of the policy exclusion. Nor do we doubt that actions by the County Clerk as County Clerk would similarly invoke the exclusion’s applicability. However, in our view campaign activities of an office seeker do not constitute business pursuits within the intendment of the policy whether those activities are engaged in by an incumbent office-holder successfully seeking reelection, by an incumbent office-holder unsuccessfully seeking reelection, or by a candidate seeking initial election to office. We are satisfied that while these campaign activities may result in the candidate’s obtaining a 'profession or occupation’, they cannot themselves be regarded as activities conducted in the performance of that profession or occupation. In our view, activities in pursuit of the profession or occupation conferred by election to a public office can only be engaged in by one who has gained the office and is undertaking the duties of the office.” (Burdge v Excelsior Ins. Co., 194 NJ Super 320, 323-324, 476 A2d 880, 882 [1984], supra.)
Defendant contends that the Burdge decision (supra) is distinguishable because the court in that case felt a special relationship existed for public officeholders. The court did refer to the fact that the campaign activities of candidates for public office enjoy special constitutional protection and that political campaign activity for public office constitutes an exercise of rights, not a business activity. However, that conclusion was in addition to and independent of the prior-quoted analysis, which is focused upon the nature of the tasks performed. The court distinguished the candidate’s campaigning from his performance of his duties in office. The latter, the *709 court stated, would be a business pursuit, despite the fact that public office was involved. Therefore, the decision is applicable here. In fact, in holding "this policy exclusion does not apply to reelection campaign activities” the appellate court did not even mention public office.
The particular wording of the two exclusionary clauses at issue also lends support to plaintiffs position. The first exclusion states that personal liability coverage does not apply "to bodily injury or property damage * * * [a]rising out of business pursuits of any insured”. (Emphasis supplied.) This portion of the policy does not exclude psychic injury. Therefore it is reasonable to interpret it as not excluding coverage for the damage based upon mental anguish, for which the injured party seeks recovery in his counterclaim. Because there is a reasonable interpretation different from the one being urged by defendant, this portion of the policy does not support defendant’s claim that it has no obligation to defend and indemnify plaintiff, at least for compensatory damages for mental anguish.[2] (See, Sincoff v Liberty Mut. Fire Ins. Co., 11 NY2d 386, 390 [1962].)
The second exclusionary clause employs the term "business” instead of "business pursuits”. It states that personal injury coverage does not apply to "[i]njury arising out of the business of any insured.” The policy apparently does not define either term. In Krings v Safeco Ins. Co. (supra) the court noted that the use of the plural, "business pursuits”, negates an inference that only the insured’s principal or sole trade, occupation or profession was excluded. This supports a converse conclusion, in other words, that by employing the word "business”, the insurer here intended to refer only to the plaintiff’s principal occupation, trade or profession of union president. The term "business” may have broad connotations in other circumstances. (See, Matter of Steinbeck v Gerosa, 4 NY2d 302, 308 [1958].) However, when a term is not defined in an insurance policy it should be given a meaning that would be arrived at in the common speech of the average person. (Lewis v Ocean Acc. & Guar. Corp., 224 NY 18, 21 [1918].) Here, the average person reading the exclusionary phrase "arising out of the business of any insured” reasonably could interpret the *710 words as referring solely to the insured’s principal profession, trade or occupation. This is particularly so in view of defendant’s use of the plural "business pursuits” elsewhere in the policy. As the term is at least arguably ambiguous, it should be construed most favorably to the insured; if defendant had wanted to exclude any business activity of the insured, it should have said so. (Sperling v Great Am. Indem. Co., 7 NY2d 442, 450 [I960]; see, Mount Vernon Fire Ins. Co. v Travelers Indem. Co., 47 NY2d 575, 580 [1979].)
Based upon all of the aforesaid, with the exception stated hereinafter, I find that defendant is obligated to defendant and indemnify plaintiff on the counterclaim for libel asserted by William Mason. As plaintiff concedes, defendant is not obligated to indemnify plaintiff for the punitive damages sought by Mr. Mason.
Defendant’s interest in defending the libel action is in conflict with plaintiff’s interest.[3] Therefore, plaintiff is entitled to a defense by a counsel of his own choosing, whose reasonable fee is to be paid by defendant. (Public Serv. Mut. Ins. Co. v Goldfarb, 53 NY2d 392, 401 [1981].) Accordingly, I declare defendant is obligated to defend plaintiff on the counterclaim asserted by William Mason, to indemnify him for any compensatory damages recovered by Mr. Mason, and to provide independent counsel to be selected by plaintiff for the defense.

. Neither party has submitted a copy of the entire policy. Therefore the court assumes that all relevant portions are before it.

. As noted, Mr. Mason also seeks recovery for damages to his reputation and profession, which would constitute property damage. Consequently, absent the conclusion reached above (that plaintiffs activities are not business pursuits) this exclusion could have applied to that claim for property damage.

. This arises from the fact that defendant will have to pay compensatory but not punitive damages. Consequently, while plaintiff would prefer to see damages, if any, cast as compensatory, defendant would prefer that damages, if any, be deemed punitive.