ALFIN, INC., Irwin Alfin, Sam Reich, Betsy Alfin, John D. Saunders and Bernard Stern, Plaintiffs,

v.

PACIFIC INSURANCE COMPANY, Defendants.

No. 89 Civ. 262 (KC).

United States District Court, S.D. New York.

April 13, 1990.

Andrew Dash & Ken Schachter, Solin & Breindel, New York City, for plaintiffs.

Denny Chin, Campbell, Patrick & Chin, New York City, David M. Gische, Ross, Dixon & Masback, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

CONBOY, District Judge:

This dispute centers around the interpretation of an exclusion in a directors' and officers' liability policy. Both the insured and the insurer have moved for summary judgment. The insured, a company and its directors and officers (referred to collectively as "Alfin"), seek, *inter alia*, a declaration that the exclusion in issue does not exclude coverage for certain lawsuits against the company and its officials.

## BACKGROUND

The following facts are distilled primarily from the parties' statements pursuant to Civil Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York ("Rule 3(g) Statement"). We observe that Alfin moved for summary judgment first, submitting a basically useless Rule 3(g) Statement in that it does not set out a "short and concise statement of the material facts as to which [it] contends there is no genuine issue of material fact to be tried." Civil Rule 3(g) of the United States District Courts for the Southern and Eastern Districts of New York. Instead of setting out the facts, Alfin's statement simply declares that certain documents exist and are appended to certain affidavits. We would like to make it clear that such a submission will not be countenanced in the future. Furthermore, we note that Alfin also did not submit, in accordance with the local rule, a statement controverting the Rule 3(g) Statement by defendant Pacific Insurance Co. ("Pacific") on its cross-motion for summary judgment. Accordingly, we have deemed "admitted" all of the material facts as set forth in Pacific's Rule 3(g) Statement.[1]

---

**1.** We note that, in any event, Alfin did not     contest the facts as asserted in Pacific's Rule

In September of 1983, Alfin[2] made an initial public offering of its stock. In connection with this offering, Alfin obtained through the United States Fire Insurance Company a policy of insurance protecting it in the event of claims based on omissions or misrepresentations in the offering materials. In late 1983, Alfin desired to purchase a directors' and officers' liability insurance policy ("D & O policy"). Alfin obtained proposals for such policies from three insurers—National Union Fire Insurance Company, Federal Insurance Company and the defendant Pacific. The proposals from National and Federal called for higher premiums than the proposal from Pacific. National offered a $3 million policy at a 1–year pre-paid premium of $9,100. Federal quoted a $3 million 1–year policy at a premium of $11,250. Both of these proposals indicated the following exclusion from the coverage offered:

> Special Exclusion for any claims based upon or arising out of the public offering of stock to the general public through Ladenburg, Thalman & Co., Inc., as provided in the Preliminary Prospectus dated August 3, 1983.

By contrast, the proposal from Pacific quoted a $3 million policy at a 3–year pre-paid premium of $7,108. Under the conditions of the policy, as listed in the proposal, the following condition is listed:

> Blanket SEC Exclusion.

Alfin, after comparing the proposals, ultimately procured a D & O policy through Pacific. Pacific issued to Alfin Policy No. PI 020068 A & B (the "Policy"). Endorsement No. 6 to the policy as issued reads as follows:

### SECURITIES EXCHANGE COMMISSION EXCLUSION

IN CONSIDERATION OF THE PREMIUM CHARGED, IT IS UNDERSTOOD AND AGREED THAT THE COMPANY SHALL NOT BE LIABLE TO MAKE ANY PAYMENT IN CONNECTION WITH ANY CLAIM OR SUIT, INCLUDING BUT NOT LIMITED TO SHAREHOLDERS' DERIVATIVE AND/OR REPRESENTATIVE CLASS ACTION SUITS, BASED UPON OR ARISING OUT OF ANY OFFERING OR SALE OF SECURITIES AND EXCHANGE COMMISSION PURSUANT TO THE FEDERAL SECURITIES ACT OF 1933 AND OR THE FEDERAL SECURITIES OF 1934 AND AMENDMENTS THERETO.

It is the interpretation of this exclusion that is at the crux of the lawsuit.

Currently pending against the plaintiffs in this District are three putative class actions, *Hemming v. Alfin Fragrances, Inc., et al.,* (S.D.N.Y. No. 86 Civ. 2563 (LBS)); *Ryback v. Alfin Fragrances, et al.,* (S.D.N.Y. No. 87 Civ. 4353 (LBS)); *Antwiel v. Alfin Fragrances, et al.,* (S.D.N.Y. No. 88 Civ. 0525 (LBS)). Each of these actions alleges violations of Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b–5 promulgated thereunder. The named plaintiffs in each of the suits purchased shares of Alfin not from the initial public offering but on the open market of the American Stock Exchange. Plaintiffs retained counsel to defend these actions, then requested that Pacific cover the attorneys' fees pursuant to the D & O Policy. Pacific advised Alfin of the former's belief that these lawsuits "[fall] squarely within the ambit of Exclusion 6" and, therefore, that "any liability that either Alfin or its officers or directors may incur as a result of the *Hemming, Ryback,* and *Antwiel* claims falls outside the scope of coverage afforded by" the Policy. Affidavit of Kenneth I. Schacter ("Schacter Moving Aff."), sworn to on November 3, 1989, Exhibit C. In light of this disclaimer of coverage, Alfin filed this declaratory relief action. In the meantime, Alfin, which is permitted pursuant to Section 6.06 of its bylaws to indemnify its officers and directors to the fullest extent permitted by law[3] for claims

---

3(g) Statement, but instead addressed them squarely in its own reply memorandum at pages sixteen through eighteen.

**2.** Alfin, Inc. is the successor corporation to Alfin Fragrances, Inc.

**3.** New York's Business Corporation Law §§ 722–726 (McKinney's Supp.1990).

arising out of civil or criminal actions or proceedings in connection with their service as an officer or director of Alfin, has incurred significant attorneys' fees and expenses in the defense of these three actions.

The parties' positions can be summarized as follows. Pacific believes that Endorsement No. 6 excludes coverage for *all* claims based upon *any* violation of either the 1933 or 1934 Acts, which interpretation is fundamentally based on an elided version of the exclusion (omitting the phrase "registered with the Securities and Exchange Commission"). Alfin claims that this exclusion is operative only against claims based on violations arising out of the *public offering* of the securities in 1983, and does not operate to exclude coverage of claims arising out of purchases of stock in the open market. This interpretation is founded primarily on the elided phrase as well as the term "offering or sale of securities" immediately preceding that phrase, which Alfin claims tracks the language of the 1933 Act, the act relating to public offerings of securities. Alfin points out that its initial public offerings had to be registered under the 1934 Act as well. Finally, Alfin directs attention to the fact that the language of the exclusion was substantially modified in 1986, to unambiguously exclude claims of fraud asserted by a purchaser of the stock on the open market. *See* Alfin's Memorandum of Law in Support of its Motion for Summary Judgment, Exhibit 2. To Alfin, "[t]he fact that Pacific thought it necessary to make dramatic changes in policy language ... shows that the first policy, if intended [by the insurer] to cover the same range of liability as the second version, failed to do so explicitly." *Id.* at 34–35. Despite this difference in interpretations, both parties believe that the issue of whether or not the policy covers the costs incurred defending the lawsuits or whether the exclusion is operative such that Pacific is not liable for the same, may be decided on summary judgment.

## ANALYSIS

■ This is a diversity action concerning an insurance policy issued to the Alfin, a New York corporation, in New York by a California insurer. Insurance contracts in diversity actions must be interpreted under the applicable state law. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Here, the parties have not explicitly stated which state's law governs nor have they pointed to a governing law clause in the policy. They have, however, assumed, as demonstrated by their extensive citation to New York case law, that the policy is to be construed according to New York law. Accordingly, we will analyze the policy under New York law.

### A. Summary Judgment Standards

■ In an extremely comprehensive and insightful opinion, Judge Weinstein of the Eastern District of New York, expounded on the tensions between the Federal Rules of Civil Procedure, specifically those relating to summary judgment, and the substantive state law of contracts. *Uniroyal, Inc. v. Home Insurance Co.,* 707 F.Supp. 1368, 1372–78 (E.D.N.Y.1988). Judge Weinstein explained that under the federal rules, which provide a proceduralist view, "ambiguity inherently necessitates a full presentation of extrinsic evidence for the factfinder's evaluation." *Id.* at 1373. On the other hand, under state law, "ambiguities in an insurance policy are to be construed by the court against the insurer." *Id.* Judge Weinstein held that "the proper resolution under federal procedure and New York law is that summary judgment is proper on an ambiguous insurance policy when, after having allowed full discovery and found no valuable extrinsic evidence of the parties' intent, the court applies as a last resort the state law presumption construing the policy against the insurer." *Id.* We agree with this thoughtful analysis and we adopt it here.

### B. New York Contract Law

■ Under New York law, an insurance policy is a contract "which, like any other contract must be construed to effectuate the parties' intent as expressed by their words and purposes." *American Home Products Corp. v. Liberty Mutual Ins.*

*Co.*, 565 F.Supp. 1485, 1492 (S.D.N.Y.1983), *aff'd as modified,* 748 F.2d 760 (2d Cir. 1984) (*"AHP"*); *IBM Poughkeepsie Employees Federal Credit Union v. Cumis Ins. Soc'y, Inc.,* 590 F.Supp. 769, 772 (S.D. N.Y.1984). An insurance contract must be read as a whole to determine what the parties reasonably intended by its terms. *Newmont Mines, Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 135 (2d Cir.1986). "No construction of an ambiguous provision is permitted that is inconsistent with the contract's plain meaning or with the parties' clear intentions.... To disregard express language in an insurance contract because of claimed ambiguity 'would violate the more fundamental rule of construction' that requires a court to construe the contract as a whole, and whenever possible to give effect to all of its parts." *AHP,* 565 F.Supp. at 1492 (citation omitted).

■ The threshold question of whether a policy is clear or ambiguous is a question of law. *Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir.1980); *Uniroyal, supra,* 707 F.Supp. at 1375. The Second Circuit has ruled that in insurance disputes an "insurer bears a heavy burden of proof, for it must ' "establish that the words and expressions used [in the insurance policy] *not only are susceptible of the construction sought by [the insurer] but that it is the only construction which may be fairly placed upon them." ' " Vargas v. Insurance Co. of North America,* 651 F.2d 838, 840 (2d Cir.1981) (emphasis in original) (quoting *Filor, Bullard & Smyth v. Insurance Co. of North America,* 605 F.2d 598, 602 (2d Cir. 1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1506, 59 L.Ed.2d 776 (1979) (in turn quoting *Lachs v. Fidelity & Casualty Co. of New York,* 306 N.Y. 357, 365–66, 118 N.E.2d 555, 559 (1954))). The insurer is " 'obliged to show (1) that it would be unreasonable for the average man reading the policy to [construe it as the insured does] and (2) that its own construction was the only one that could fairly be placed on the policy.' " *Vargas,* 651 F.2d at 840 (quoting *Sincoff v.*

*Liberty Mutual Fire Ins. Co.,* 11 N.Y.2d 386, 390, 230 N.Y.S.2d 13, 16, 183 N.E.2d 899, 901 (1962)).

■ Viewing the policy from the vantage point of the "reasonable expectation and purpose of the ordinary businessman," *Avondale Indus., Inc. v. Travelers Indemnity Co.,* 697 F.Supp. 1314, 1319 (S.D.N.Y. 1988), *aff'd,* 887 F.2d 1200 (2d Cir.1989), *rehearing denied,* 894 F.2d 498 (2d Cir. 1990), *petition for cert. filed,* April 10, 1990, we do not believe that it is unreasonable for Alfin to construe the policy as it does. The manner in which the exclusion is drafted admits of ambiguity such that the interpretation proffered by Alfin is at least as plausible as that proffered by Pacific without resort to extrinsic evidence. Accordingly, as the insurer's interpretation is not the only reasonable and fair construction as a matter of law, we must look to the extrinsic evidence submitted by the parties. *Uniroyal, supra,* 707 F.Supp. at 1374–75; *Ploen v. Aetna Casualty and Surety Co.,* 138 Misc.2d 704, 525 N.Y.S.2d 522, 524 (Sup.Ct.1988).[4]

■ Once extrinsic evidence is admitted, two results may ensue: (1) that the extrinsic evidence offered raises a question of credibility or presents a choice among reasonable inferences; and (2) that the extrinsic evidence offered fails to raise credibility or such a choice. *Uniroyal, supra,* 707 F.Supp. at 1374–75. Under New York law, the first situation requires a submission to the factfinder while the second situation, like the case when no extrinsic evidence is offered, mandates construction by the court as a matter of law. *Id.; see also Board of Educ. v. CNA Ins. Co.,* 647 F.Supp. 1495, 1502 (S.D.N.Y.1986) (ambiguous provisions are to be construed by the court *"unless* 'determination of the intent of the parties depends on the credibility of extrinsic evidence or on a choice among reasonable inferences ...' ") (quoting *Hartford Accident & Indemnity Co. v. Wesolowski,* 33 N.Y.2d 169, 171–72, 350

**4.** We note that Alfin's is not the only reasonable interpretation either, and, therefore, we reject the contention that we may grant summary judgment in its favor based on the "unambiguous" language of the policy alone.

N.Y.S.2d 895, 898, 305 N.E.2d 907, 909 (1973)); *Carvel Corp. v. Rait*, 117 A.D.2d 485, 503 N.Y.S.2d 406, 409 (2d Dep't 1986) (if "no questions of credibility are raised, and there are no inferences to be drawn from the extrinsic evidence ... the motion present[s] an issue of law").

■ We must now examine the extrinsic evidence adduced by the parties. Pacific has submitted deposition testimony of its underwriters to demonstrate their understanding of the meaning of the exclusion in issue. These *post hoc* interpretations are legally irrelevant because, as we alluded to above, we must interpret insurance contracts according to "the reasonable expectation and purpose of the ordinary businessman." *Avondale Indus., Inc. v. Travelers Indemnity Co., supra,* 697 F.Supp. at 1319. Furthermore, the "subjective views of [the insurer's] officials, never communicated to [the insured] until ... litigation" cannot establish the parties' intent. *Ingersoll Milling Machine Co. v. M/V Bodena,* 619 F.Supp. 493, 506 (S.D.N.Y.1985), *aff'd in part and rev'd in part on other grounds,* 829 F.2d 293 (2d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *see also Lubrication and Maintenance, Inc. v. Union Resources Co., Inc.,* 522 F.Supp. 1078, 1081 (S.D.N.Y.1981) ("Determination of the intent of the parties at the time they entered into the contract is not governed by their unexpressed subjective views....") (footnote omitted). Pacific argues that since the "circumstances surrounding the purchase of the Pacific policy demonstrate that the sole *express* intention of Alfin was to purchase an insurance contract which contained a 'Blanket SEC Exclusion' rather than choosing a proposal which clearly stated that it excluded only Alfin's initial public offering liability.... [t]he manifestation of intent by Pacific to append a 'Blanket SEC Exclusion' to the policy is, therefore, the operative intent of the parties...." Pacific's Memorandum of Law in Opposition to Plaintiffs' Motion for Partial Summary Judgment and in Support of its Cross–Motion for Summary Judgment ("Pacific's Mem.") at 31. To support this proposition, Pacific quotes the Restatement (2d) of Contracts, § 20, as follows: "the manifestations of the parties [of mutual assent] are operative in accordance with the meaning attached to them by one of the parties if ... that party has no reason to know of any different meaning attached by the other, and the other has reason to know the meaning attached by the first party."

■ To sustain the argument that Alfin had to know of the meaning attached by Pacific, Pacific points to the existence of the two other D & O proposals containing specific exclusions for claims flowing from Alfin's 1983 initial public offering as well as the lower premium level quoted by Pacific. To demonstrate that it did not know of the meaning attributed to the clause by Pacific nor was it on notice of such a meaning due to the differentials in the premiums, Alfin submitted deposition testimony as well as affidavits. First, there is the affidavit of Alfin's insurance broker that no one from Pacific told her of Pacific's "intention to exclude all claims flowing from the federal securities laws from the policy's protection." Affidavit of Phyllis Popper ("Popper Aff."), sworn to December 20, 1989, at ¶¶ 5, 8. Ms. Popper also states that the fact that a lower premium was quoted on the Pacific proposal did not necessarily indicate that the scope of the coverage offered was less than that of the other proposals as the insurer could have had other motivations, such as trying to obtain the insured's business, for quoting a lower premium. *Id.* at ¶¶ 6 & 7. This statement is also confirmed by the deposition testimony of Charles Bertenthal, another insurance broker who also represented Alfin, wherein Mr. Bertenthal testified that often there was no linkage between premium level and policy coverage. Deposition of Charles Bertenthal, sworn to August 23, 1989 at 27 (Annexed to the Affidavit of Kenneth I. Schacter ("Schacter Reply Aff."), sworn to December 22, 1989 as Exhibit C). Finally, there is the deposition testimony of Alfin's Chief Operating Officer and Treasurer, Sam Reich, that Alfin's intent was to obtain "the broadest coverage possible" and that the company "wanted to be covered for everything," and that it was Alfin's understanding that "we

should be covered for everything and anything." Deposition of Sam Reich at 19, annexed to the Schacter Reply Aff. as Exhibit B.

Other than the cursory language in the proposal itself, Pacific can point to nothing concrete to show that Alfin viewed the Pacific proposal as any less broad in coverage than the other three proposals. For example, Pacific has not presented testimony from any of its agents or employees involved in the negotiation of the proposal or of the policy itself, rather only what an underwriter in 1983 would have thought. Nonetheless, we conclude that the extrinsic evidence offered, as well as the authority cited for the proposition that the "size of the premiums is relevant to the construction of the policy," see Pan Am World Airways, Inc. v. Aetna Casualty & Sur. Co., 505 F.2d 989, 1001 n. 10 (2d Cir.1974) (citing 1 G. Couch, Cyclopedia of Insurance Law § 15:51 (2d ed. 1959)), at least presents a choice among reasonable inferences, i.e., that Alfin knew that Pacific intended to exclude any and all liability arising out of the 1933 and 1934 Acts or that Alfin believed that all three of the proposals, despite the lack of specificity in Pacific's, excluded securities liability arising only out of the initial public offering. We observe that although we believe that, in light of all of the extrinsic evidence, the second alternative is the more plausible of

the two, especially in view of the subsequent change in the terminology of the exclusion and the fact that Alfin was already insured for claims arising out of the 1983 offering, we cannot say that the interpretation of the extrinsic evidence offered by Pacific, drawn primarily from inferences, is flatly unreasonable. Accordingly, the cross motions for summary judgment are denied.[5]

The parties are directed to submit a joint pre-trial order by May 1, 1990 and the matter will be placed on the Court's ready-trial calendar as of May 15, 1990.

SO ORDERED.

---

**5.** Although both sides argue that this case is one that is proper for adjudication on summary judgment, citing the Uniroyal case, we believe that case teaches that if the extrinsic evidence offered raises a question of credibility or presents a choice among reasonable inferences, then "New York law requires a submission to the factfinder." Uniroyal, supra, 707 F.Supp. 1368, 1374 (E.D.N.Y.1988). Each side assumed that we could decide the issue on summary judgment because it believed no such choice was present. As indicated in the text, we have found otherwise. Indeed, it is axiomatic that the mere fact that both parties have moved for summary judgment does not mean that one party must prevail. Home Ins. Co. v. Aetna Casualty & Sur. Co., 528 F.2d 1388, 1390 (2d Cir.1976) (per curiam). Accordingly, we reject Alfin's assertion, relying on Uniroyal, that we must now apply the doctrine of contra proferentum, construing the policy against the insured, the drafter of the policy, because we have found an ambiguity that we cannot now resolve. This doctrine is applied only in cases where there is

an ambiguity in some terminology of the policy which cannot be resolved by the presentation of extrinsic evidence. In Uniroyal, the court, in the absence of extrinsic evidence, utilized the presumption of contra proferentum to resolve an ambiguity in the policy. Here, by contrast, we have found that there is extrinsic evidence which is subject to two reasonable interpretations. We have not, however, found the controversy is incapable of resolution by examination of the extrinsic evidence, rather, we have found that it would be improper for us to do so on summary judgment. Furthermore, perhaps the factfinder, after hearing all of the evidence, will be able to resolve the dispute without need to employ this doctrine of construction, which is only to be used as a last resort. See, e.g., Interpetrol Bermuda, Ltd. v. Lloyd's Underwriters, 588 F.Supp. 1199, 1203 n. 14 (S.D.N.Y.1984) (district court opined that insurer would be entitled to introduce at trial extrinsic evidence regarding the parties' intent since doctrine of construing the policy against the insured is to be used as a matter of last resort).