**BETHLEHEM STEEL CORPORATION,**
Appellant,

v.

**John E. FOLEY, District Director of
Internal Revenue, Appellee.**

No. 389, Docket 32012.

United States Court of Appeals
Second Circuit.

Argued May 9, 1968.

Decided July 26, 1968.

4. See additional cases cited therein.

Donald C. Lubick, Buffalo, N. Y. (Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., on the brief), for appellant.

Robert J. Campbell, Dept. of Justice, Washington, D. C. (Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Joseph Kovner, Dept. of Justice, Washington, D. C., Thomas A. Kennelly, Acting U. S. Atty., and C. Donald O'Connor, Asst. U. S. Atty., Western Dist. of New York, on the brief), for appellee.

Before LUMBARD, Chief Judge, and SMITH and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

In 1964, the State of New York contracted with Schwab Bros. Trucking, Inc. (the contractor) for the construction of two sections of arterial highway in Buffalo. The contractor in turn made an agreement with Bethlehem Steel Corporation (Bethlehem) for the purchase and delivery of heavy construction materials to be used on the highway project. The materials were shipped to the job site between the first of August and the end of November, 1964.

Between January 15 and February 16, 1965, the District Director of the Internal Revenue Service assessed allegedly delinquent taxes due from the contractor in the amount of $200,672.65; and on February 16, pursuant to §§ 6321–6323 of the Internal Revenue Code of 1954, 26 U.S.C. §§ 6321–6323,[1] he filed with the Clerk of Erie County, New York, a notice of lien relating to these assessments.

The contractor experienced grave financial difficulties during early 1965 and at some point in late February or early March it was forced to abandon the construction project. On March 24, the State of New York terminated the contractor's authority to proceed under the contracts.

At the time the contractor ceased work on the project, some of the materials supplied by Bethlehem had neither been installed in the project nor paid for by the contractor and remained stored at the site. On March 5, the District Director, pursuant to the tax lien filed by the IRS on February 16, levied upon and seized numerous pieces of equipment and supplies, including the heavy building materials supplied by Bethlehem.

On June 4, Bethlehem notified the District Director of its claim under § 39–c of the New York Lien Law, McKinney's Consol.Laws, c. 33,[2] which per-

---

1. § 6321 provides:

 "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

2. § 39–c provides:

 "If for any reason after the work of a private or a public improvement of real property is abandoned by an owner, a contractor or a subcontractor before the completion thereof by such owner, contractor or subcontractor, or if, after the same is completed, materials delivered are not used therefor, a person who has delivered materials for the improvement which have not been incorporated therein and for which he has not received payment may repossess and remove such materials; and thereupon he shall have no lien on the real property or improvements against persons secondarily liable, for the price thereof, but he shall have the same rights in regard to the materials as if he had never parted with the possession. This right to repossess and remove the materials shall not be affected by their sale, encumbrance, attachment, or transfer from the site of the improvement, except that, if the materials have been so transferred, the right to repossess them shall not be effective as against a purchaser or encumbrancer thereof in good faith whose interest therein shall have arisen since

mits a materialman to repossess and remove materials supplied by him but not paid for and which remain unused or uninstalled after the project has been completed or abandoned. Bethlehem also requested that the tax levy and seizure be withdrawn in its favor. The District Director refused the request and Bethlehem filed suit under 28 U.S.C. §§ 1340 and 2463 to recover possession of the seized materials.

Pursuant to a stipulation by the parties to the suit, the unused and uninstalled materials were sold and the proceeds were paid into the registry of the District Court, to be paid over as may be determined by the ultimate disposition of the issues in this case. The parties further stipulated that the tax lien filed by the IRS attached to the uninstalled materials in question, which, it was agreed, were lawfully levied and seized prior to Bethlehem's exercise of its right of repossession under § 39–c of the New York Lien Law, and that Bethlehem took all steps necessary to protect its rights, if any, under § 39–c. Indeed, the record before us reflects that the IRS tax lien was filed on February 16, three days before the earliest date on which the project could be considered abandoned and before Bethlehem's right of repossession and removal accrued.

 Bethlehem moved for summary judgment on the ground that its right to repossess and remove under § 39–c is a property right in the uninstalled materials which upon exercise extinguished the IRS lien which attached only to the

property or interest in the property which the contractor then had. The IRS cross-moved for summary judgment asserting the priority of its lien and from the order granting that cross-motion and entering judgment for the Government, Bethlehem now brings this appeal. We affirm.

"The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that 'in the application of a federal revenue act, the state law determines the nature of the legal interest which the taxpayer had in the property * * *.' (footnote omitted) Morgan v. Commissioner [of Internal Revenue], 309 U.S. 78, 82 [60 S.Ct. 424, 426, 84 L.Ed. 585]." Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 1280, 4 L.Ed.2d 1365 (1960).

 Once the nature and extent of the contractor's property rights have been ascertained under state law, the questions of priority are then determined under federal law because § 6321 "creates no property rights but merely attaches consequences, federally defined, to rights created under state law * * *." United States v. Bess, 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1135 (1958). Since it is clear under the applicable portions of the New York Personal Property Law [3] that "the

such transfer from the site of the improvement, or as against a creditor attaching after such transfer. The right to repossession and removal given by this section shall extend only to materials whose purchase price does not exceed the amount remaining due to the person repossessing; but where materials have been partly paid for, the person delivering them may repossess them as allowed in this section on refunding the part of the purchase price which has been paid less the cost of removal."

3. The record indicates the date of only one of the three contracts between Bethlehem and Schwab (September 16, 1964), so we cannot be certain that all were signed before September 27, 1964, the date the Uniform Commercial Code (UCC) became effective in New York. Because the result would not differ under the UCC, we have assumed that all the contracts are governed by the New York Personal Property Law, McKinney's Consol.Laws, 41 (PPL).

Under PPL § 99, the "property" in goods passes when the parties to a con-

property" in the uninstalled materials had passed to the contractor by the dates of the federal tax assessment and the levy and seizure, the issues are narrowed to determining what property or other interest the appellant may have had by virtue of § 39-c and whether that interest affects the contractor's property or rights to property in the uninstalled materials in a manner which defeats the IRS's perfected tax lien.

The language and meager legislative history of § 39-c indicate that the provision was designed to remedy a specific plight in which materialmen often found themselves. Charles Howard Levitt, counsel to the Lien Law Revision and Enforcement Association, in a letter [4] urging the then Governor, Franklin D. Roosevelt, to approve the bill which became § 39-c, wrote:

> "Numerous cases occur annually where an operation is completed or abandoned, and the materials amounting to thousands of dollars are left at the operation. Notwithstanding the fact that the person responsible for the cost of this material is hopelessly insolvent, the seller of the material is not in a position to repossess himself of such material without obtaining the consent of the buyer. Such consent is rarely given. In every one of these instances, the material man whose material is left on the operation, sustains an unwarranted loss."

Section 39-c was apparently enacted to provide a self-help remedy for these materialmen and to avoid the senseless and unfair waste which might otherwise occur if they were not permitted to repossess and remove unpaid for and uninstalled materials. There is no indication in the language of the section or in the legislative history, however, that the leg-

islature intended that the materialmen should retain a property interest in each item of the material until it is installed in the project. Rather, it seems likely that the legislature, without engaging in the use of property labels imbued with special meaning or legal consequences, merely intended that a right to repossess and remove unpaid for and uninstalled materials should accrue to the materialman if and when the project is completed or abandoned.

This limited legislative purpose is not subverted by a construction of the federal tax lien law and § 39-c which renders the materialman's after accruing right inferior to the IRS's earlier perfected tax lien. Indeed, both the state policy to avoid the unfairness and senseless waste resulting from the inability of the materialman to recover uninstalled materials left at a completed or abandoned project site and the federal policy to create a uniform and manageable system for the priority of liens are effectuated by this construction.

This result also accords with United States v. Aquilino, supra, where the property interest of the contractor which the IRS unsuccessfully sought to attach was the bare legal title in funds held in trust for the benefit of the materialmen, and in which the contractor had no beneficial interest. In the instant case, although the power of the contractor to dispose of the materials was considerably limited by § 39-c, at the very least it had the right to use the materials in the project and be paid by the state for them.

In the absence of clearer legislative intent to retain something akin to ownership in the materialman, we believe that the contractor's "rights to proper-

tract so intend. PPL § 100 gives various rules for ascertaining intention, and the last moment at which "property" could have passed under those rules, absent a conditional sale, is upon delivery. The record reflects that all deliveries were made before February 16, 1965, the date the IRS filed notice of its tax lien.

4. This letter formed a part of the Governor's bill jacket covering the enactment of § 39-c, and constitutes the only legislative history to which we have been referred or which we have found which bears on the purpose of § 93-c.

ty" were sufficient for the attachment of the federal tax lien.

If the materialmen wish to establish priorities in these uninstalled materials and protection from federal tax liens, they may still avail themselves of the contractual secured interests which are protected under 26 U.S.C. § 6323.

Accordingly, we affirm the decision below.