GENERAL STAR INDEMNITY
COMPANY, Plaintiff,

v.

CUSTOM EDITIONS UPHOLSTERY
CORP., individually and as Assignee of
John Doe, Jane Doe and Does 1 to 42,
Sandra Rose Corp., Stanley Kravet, Rho-
da Kravet, Lourdes Industries, Inc. Prof-
it Sharing Plan, Ben Gruber, Inc., Zimr-
ing & Associates, Weg & Meyers, P.C.,
the City of Yonkers, United States of
America, James Brandt, Jane Doe, John
Does 1 to 42, Defendants.

No. 96 Civ. 2610 (MBM).

United States District Court,
S.D. New York.

Oct. 7, 1996.

Phebe B. Macrae, Mound Cotton & Wollan, New York City, for Plaintiff.

Martin J. Siegel, Assistant United States Attorney, New York City, for Defendant United States.

Milton Thurm, Thurm & Heller, New York City, for Defendants Stanley Kravet, Rhoda Kravet and Lourdes Profit Sharing Plan.

Jesse R. Dunbar, Weg & Myers, New York City, for Defendants Ben Gruber and Weg & Myers.

Seoun K. Kim, Engel & McCarney, New York City, for Defendant Marc Zeff Consulting Group, Inc.

Marc Miner, Zalman & Schnurman, New York City, for Defendant Zimring & Associates.

Christopher G. Kelly, Haight Gardner Poor & Havens, New York City, for Defendant Lucy Weir Interiors.

Hal R. Ginsburg, Kapson & Ginsburg, New York City, for Defendant Custom Editions.

Daniel M. Isaacs, Cozen & O'Connor, New York City, for Atlantic Mutual Insurance Company.

MUKASEY, District Judge.

General Star Indemnity Company ("General Star"), insured the premises of two of the defendants, Custom Editions Upholstery Corp. ("Custom Editions") and Sandra Rose Corp., against fire. It brought this interpleader action in New York State Supreme Court, New York County, to resolve conflicting claims to the proceeds of a claim stemming from a fire on these premises. The case was removed to federal court pursuant to 28 U.S.C. §§ 1444 and 2410, which permit removal of interpleader actions where the government is a defendant. Plaintiff asks this court to resolve the conflicting claims to the proceeds and absolve it from further liability to the multiple claimants. Six categories of defendants have asserted their rights to the proceeds and moved for summary judgment. For the reasons given below, summary judgment is granted to the United States and denied to the other parties.

I.

Sandra Rose Corp. is the owner of property located at 498–500 Nepperhan Avenue, Yonkers, New York (the "premises"), which Custom Editions leased for its upholstery business. Custom Editions and Sandra Rose purchased fire insurance for the premises from plaintiff for the period December 2, 1994 to December 2, 1995. (Macrae Aff. ¶ 2) Under Commercial Property Insurance Policy Number IAG–328341 (the "policy"), General Star provided coverage for fire damage to the building for up to $1.5 million, for damage to the contents of the building for up to $300,000, and for business income loss for up to $200,000. (Id. ¶ 3, Ex. 1) The policy contained a $5,000 deductible and named Sandra Rose and Custom Editions as the

insured parties. (*Id.*, Ex. 1) The policy named Stanley Kravet, Rhoda Kravet and Lourdes Profit Sharing Plan as mortgagees. (*Id.*)

The mortgage on the premises was assigned to the current mortgagees, the Kravets and Lourdes Profit Sharing Plan, on April 28, 1993, with a remaining balance of $600,385.05. The assignment provided that the mortgagor would insure the premises against loss by fire for the benefit of the mortgagee. (Thurm Decl., Ex. A) The policy contains a New York "standard mortgagee" clause, and states that the insurer will pay for "loss of or damage to buildings or structures to each mortgage holder shown in the Declarations in their order of precedence, as interests may appear." (Macrae Decl., Ex. A) As of the date of the fire, the unpaid balance on the mortgage was $588,254.20, with interest of $4,416.57 accruing each month.

On or about March 27, 1995, there was a fire at the premises. Custom Editions retained Ben Gruber, Inc., a public adjuster,[1] on March 27, 1995 to pursue its claim. It agreed to pay Gruber 5% of all proceeds recovered from General Star. (Gruber Aff. ¶¶ 6, 7) Custom Editions then retained Weg & Myers, a law firm, on October 27, 1995, to assist in adjusting the claim. (Weg & Myers 3(g) ¶ 4) The Weg & Myers retainer agreement provided for a one-third contingency fee. However, it also stated that if the case was settled before Weg & Myers filed a certificate of readiness for trial, the fee would be 27.5% of any recovery, and that if the case was settled within 60 days of signing of the retainer agreement, the fee would be 10% of any recovery. (D'Antonio Aff., Ex. D) On November 3, 1995, Custom Editions hired Zimring & Associates ("Zimring") to replace Gruber as its public adjuster, and agreed to pay Zimring 10% of any recovery. (Yablon Aff. ¶ 3) On November 13, 1995, Custom Editions terminated its relationship with Weg & Myers by letter from its counsel, Alan Kapson. (Gruber Aff., Ex. C) On No-

vember 29, 1995, Custom Editions terminated its relationship with Ben Gruber, Inc. with a similar letter. (Yablon Aff., Ex. C) Finally, on December 8, 1995, Zimring submitted a complete claim on behalf of Custom Editions to General Star. (*Id.*, Ex. D)

General Star's current estimate is that the fire resulted in $739,203 of building damage and $201,092 in damage to the contents of the building, excluding personal property of customers whose property was on the premises at the time of the fire. (*Id.* ¶ 9) Custom Editions' customers who had personal property on the premises at the time of the fire have filed a total of $85,545.12 in claims. General Star has indicated that the adjustment process for the building and its contents is not yet complete, and reads the policy to mean that it owes no more than $2,500 to Custom Editions' customers.

As noted, the action was removed to this court pursuant to a notice of removal filed by the United States under 28 U.S.C. §§ 1444 and 2410, because the case involves a government claim to insurance proceeds controlled by plaintiff. Plaintiff seeks an order: 1) permitting it to pay into court $937,795 in insurance proceeds under the policy; 2) discharging it from any and all liability to defendants under the policy to the extent of such payment; (3) determining the amount of insurance proceeds to which each of the defendants is entitled and the order in which payment should be made; and (4) awarding plaintiff payment for its expenses, including reasonable attorneys' fees.

On May 6, 1996, this court ordered that all defendants claiming a right to priority payment from the policy proceeds submit papers justifying such priority. Six categories of defendants have filed motions seeking payment from the proceeds. First, the holders of a mortgage on the premises, the Kravets and Lourdes Profit Sharing Plan assert first priority to the proceeds pursuant to the "standard mortgagee" clause in the policy. They claim entitlement to $588,254, plus interest at a rate of $4,416.57 per month from

---

**1.** A public adjuster engages in the business of adjusting and preparing claims for insured parties who have sustained losses, ensuring that all policy terms and conditions have been complied with and negotiating a settlement on behalf of the insured with its insurance carrier. (Gruber Aff. ¶ 4)

March 1, 1995 to the date of payment, representing the outstanding principal and interest on the mortgage.

Second, the City of Yonkers seeks enforcement of a lien on the premises for 1995/96 taxes in the amount of $19,187.26.

Third, the United States seeks enforcement of a lien of $20,402.88, plus penalties and interest, for Custom Editions' unpaid taxes. Before the fire, the government perfected a tax lien by filing two liens against Custom Editions' property. On Nov. 4, 1993, the federal government filed a tax lien representing an unpaid March 21, 1991 tax assessment of $10,828.72. Then, on March 23, 1995, the federal government filed another tax lien representing unpaid tax assessments from August 8, 1994, September 5 and 26, 1994, and October 3, 1994 of $9,574.16. On April 17, 1995, the federal government served a Notice of Levy for $22,384.11 against Custom Editions, and it has since revised its claim to $20,402.80.

Fourth, Custom Editions' current public adjuster, Zimring, seeks 10% of any adjusted loss proceeds pursuant to a retainer agreement with Custom Editions. (Yablon Aff. ¶ 3)

Fifth, Custom Editions' former public adjuster, Ben Gruber, Inc. and attorneys, Weg & Myers, P.C., seek payment of 5% and 10% of the proceeds, respectively, pursuant to their retainer agreements with Custom Editions. (Gruber Aff., Ex. A)

Finally, about a dozen of Custom Editions' customers or their subrogees have submitted claims for property that was on the premises when the fire occurred. These include claims by: Marc Zeff Consulting Group, Inc. for $11,702.89; Aetna Casualty and Surety Company, as subrogee of Steven Donovan and Peter Trapp, for $21,030.34; Atlantic Mutual Insurance Company, as subrogee of Charles and Maria Fuerer, for $14,672.44; Lucy Weir Interiors, for $2,312.15; Chubb & Son, Inc., manager of Federal Insurance Company, as subrogee of Richard and Nancy Steinberg and Richard and Betty Hyman and Arthur Gurevich, and Chubb & Son, Inc., manager of Great Northern Insurance Company, as subrogee of David Walker and Irwin and Betty Sharkey, for a total of $25,627.60; Utica Mutual Insurance Company, as subrogee of Ellen Winkler, for $3,324.93; BAS Design, Inc., for $3,058; Alan and Michele Kapson, for $3,500; and Eleanor Windman, for $316.80.

On September 29, 1996, upon stipulation of all defendants, I ordered that plaintiff pay the mortgagees $667,752.44, representing the unpaid balance of the mortgage on the premises with interest accrued through September 1, 1996. The mortgagees, in turn, agreed to pay defendant, City of Yonkers, $19,187.26 in full satisfaction of the unpaid taxes on the premises. As a result of this payment, the mortgagees were dismissed from this action.

Defendants Zimring, Weg & Myers, Ben Gruber, Inc., United States, and a number of the customer claimants, now move for summary judgment on their claims.

## II.

In an interpleader action, a party in possession of a property, instrument or obligation subject to multiple claims may deposit the item at issue with the court. The court has the authority to "hear and determine the case," determine the rights of the rival claimants, "discharge plaintiff from further liability," and restrain all parties from instituting proceedings in any court regarding the property, instrument or obligation at issue. 28 U.S.C. § 2361 (1994). Even if this case had been filed initially in this court, it would have been governed by state law. *See Continental Coffee Prod. Co. v. Banque Lavoro S.A.,* 852 F.Supp. 1235, 1237 (S.D.N.Y.1994) ("Federal courts are bound by state law governing the rights of rival claimants to a given fund in interpleader actions brought under 28 U.S.C. § 1335."). The rule should be no different simply because this case was started in state court and then removed. *Cf. Butner v. Neustadter,* 324 F.2d 783, 785 (9th Cir.1963) (holding that after removal "federal court takes the case as it finds it on removal and treats everything that occurred in the state court as if it had taken place in federal court"). Under New York choice of law rules, New York law governs because this case involves a question of an insurer's duties

for an incident in a building located in New York City. *See Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd.,* 797 F.Supp. 176, 179 (E.D.N.Y.1992).

On a motion for summary judgment, the moving party must prove the absence of material factual issues and that the law requires judgment in the movant's favor. Fed. R.Civ.P. 56(c). The movant can do so by submitting affidavits, depositions and admissions that set forth facts which would be admissible at trial. Fed.R.Civ.P. 56(e). This burden on the moving party "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2254, 91 L.Ed.2d 265 (1986). Although the movant bears the burden of persuasion, the nonmovant may not resist a motion for summary judgment simply by submitting conclusory allegations or mere assertions about the presence of metaphysical doubt. Rather, to defeat a motion for summary judgment the nonmovant must set forth specific facts through affidavits, depositions or admissions that demonstrate a genuine issue for trial. Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

## III.

Many parties have submitted claims of priority to the proceeds of the fire insurance policy issued by plaintiff. To explain clearly the priorities of each category of party, and the issues relating to the order of and right to payment, each category other than the mortgagees whose priority has been satisfied, will be addressed individually.

### A. *The United States Government*

After the mortgagees, the next claimant with priority of payment is the United States government. The government claims that it is owed $20,402.88 in unpaid taxes from Custom Editions. Custom Editions has no objection to the payment of $3,343.29 from the insurance proceeds and disputes that it owes the remaining $17,059.59. It asserts that approximately $6,230.87 already was paid to the IRS through levies against Custom Editions' accounts and that the government

overstates its liability by $10,828.72. (Packer Aff. ¶ 19) Custom Editions, therefore, requests that $17,059.59 be deposited in an escrow account pending resolution of this dispute.

The priority of a federal tax lien against competing liens is a matter of federal law. However, state law determines the nature of the legal or property interest of the entity with the competing lien. *Aquilino v. United States,* 363 U.S. 509, 512–14, 80 S.Ct. 1277, 1279–81, 4 L.Ed.2d 1365 (1960); *Bethlehem Steel Corp. v. Foley,* 399 F.2d 314, 316 (2d Cir.1968). Section 6321 of the Internal Revenue Code provides that

> [i]f any person liable to pay any tax neglects or refuses to pay the same after demand the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (1994). A federal tax lien "is effective upon assessment against all persons, even in the absence of recordation of the lien." *Don King Prods. Inc. v. Thomas,* 945 F.2d 529, 533 (2d Cir.1991). A federal tax lien generally has priority against all competing liens. There are two exceptions to this rule. First, tax liens are not valid against certain types of property, including some securities and certain properties subject to local tax liens. 26 U.S.C. § 6323(b) (1994). Second, a competing lien will have priority over a federal tax lien if it was choate at the time that the government perfected its lien. 26 U.S.C. § 6323(a) (1994). A lien will be considered choate if the identity of lienor is known, the property subject to the lien is identified, and the amount of the lien is established. *Don King Prods.,* 945 F.2d at 533.

Here, none of the other claimants had choate liens at the time the federal tax lien was perfected. The second tax lien was filed on March 23, 1995, four days before the fire on the premises. Because the fire had not yet occurred, and the claim had not yet been adjusted, the exact amount of the other liens on the insurance proceeds had not been established. Even if the federal lien is not considered perfected until the fire oc-

curred—because the property at issue, the proceeds of the insurance policy, may not have existed before that point—none of the other claims were choate prior to the fire or became choate at the time of the fire; their amount had not been determined. Thus, the federal government has priority over the other claimants.

*LMWT Realty Corp. v. Davis Agency, Inc.*, 85 N.Y.2d 462, 626 N.Y.S.2d 39, 649 N.E.2d 1183 (1995), a case recently decided by the Court of Appeals and cited by Zimring, Custom Editions' public adjuster, does not mandate a different conclusion. In *LMWT*, the Court of Appeals held that despite the apparent statutory priority of a city tax lien, "the attorney's services created the fund at issue, and under those circumstances the attorney's charging lien must be given effect, even though a prior lien against the specific fund exists." *Id.*, 626 N.Y.S.2d at 42, 649 N.E.2d at 1186. The case is inapplicable here because the claimant is the federal government, not a city government. Thus, as noted above, federal law governs the priority of a federal tax lien and state law cannot override a federal statute. Further, Zimring is a public adjuster, not an attorney, and much of the Court of Appeals' reasoning relied on the special nature of an attorney's charging lien. *Id.* at 42–43, 649 N.E.2d at 1186–87.

However, there is a factual dispute as to the amount of the federal taxes owed to the government. Custom Editions claims that it paid a portion of the taxes owed and that the government overstates its liability. Accordingly, I find that the undisputed amount only, $3,343.29, should be paid to the government, and the amount of the remaining alleged liability be placed in an escrow account pending resolution of the disputed tax bill.

### B. *Zimring*

The claimant with the next level of priority is Zimring, Custom Editions' current public adjuster. Zimring was retained on November 3, 1995, through a retainer agreement which required that Custom Editions pay Zimring 10% of the adjusted loss proceeds. (Yablon Aff. ¶ 3) Custom Editions does not dispute that Zimring is entitled to its 10%.

The only issue relating to Zimring's payment is whether it may recover 10% of proceeds attributable to damage to the personal property of customers within Custom Editions' control at the time of the fire. Many customers have made claims arising from property destroyed by the fire, and such claims likely will amount to at least $85,000.

In New York, a public adjuster cannot recover from a party absent a written agreement with that party establishing its fee. *See* New York Insurance Law § 2108(p) (McKinney's 1985); *Weg & Myers v. Banesto Banking Corp.*, 175 A.D.2d 65, 67, 572 N.Y.S.2d 321, 323 (1st Dep't 1991). Zimring has no signed agreement with the customers to act as their adjuster.

However, this case presents an additional complication. The customers have no independent claims to policy proceeds. Their claims to such proceeds arise only when such proceeds reach Custom Editions; they derive entirely from Custom Editions' rights under the policy. The policy provides that in the event of a loss any payments for the personal property of others "will only be for the account of the owner of the property." (Macrae Aff., Ex. 1) The customers' claims in this interpleader are against Custom Editions rather than against General Star. When the proceeds ultimately are distributed, all funds paid to customers for their personal property will be considered as having been paid by Custom Editions, not by General Star. Zimring therefore may receive a fee on any recovery for personal property of customers because it has a signed agreement with Custom Editions. However, the customers' claims against Custom Editions will not be reduced by the amount of the fee because they have no obligation to Zimring.

Because the adjustment process is not yet complete, Zimring's entitlement to its commission, and the sum of the full payment, is not yet fixed. Thus, any payments to Zimring must await final resolution of this matter.

### C. *Weg & Myers, P.C.*

The next issue is whether Weg & Myers, Custom Editions' original attorneys

in this matter, can recover any of the proceeds of this claim. Weg & Myers was retained on October 27, 1995 pursuant to a retainer agreement which provided that it would be paid 10% of any recovery if the case was settled within 60 days of the firm's retention. (D'Antonio Aff., Ex. D) Weg & Myers was discharged on November 13, 1995. (Yablon Aff., Ex. C) In subsequent letters, Weg & Myers demanded its fee based on an hourly rate. It sent Custom Editions a "reconstructed hourly bill" for $3,845.37. (D'Antonio Aff., Exs. E & H) However, in its Answer, filed on June 4, 1996, Weg & Myers claimed that it was owed $94,279.50 or, according to its calculation, 10% of the proceeds. Apparently in aid of collecting a percentage-based fee that is about 25 times higher than its estimated hourly charges, Weg & Myers has demeaned its own "reconstructed hourly bill" as "speculative" because the firm does not have contemporaneously prepared billing records. (D'Antonio Aff. ¶ 7)

Custom Editions disputes the quality of Weg & Myers' work and claims that the firm was discharged for cause. (Yablon Aff. ¶ 4) Weg & Myers denies this assertion, and claims that it provided valuable legal services. (Dunbar Reply Aff. ¶ 9) "[A] client is permitted to discharge an attorney at any time without cause." *In re Montgomery's Estate*, 272 N.Y. 323, 326, 6 N.E.2d 40 (1936).

> When a client discharges an attorney *without cause*, the attorney is entitled to recover compensation from the client measured by the fair and reasonable value of the services rendered whether that be more or less than the amount provided in the contract or retainer agreement.... As between them, either can require that the compensation be a fixed dollar amount determined at the time of the discharge on the basis of quantum meruit ... or, in the alternative, they may agree that the attorney, in lieu of a presently fixed dollar amount, will receive a contingent percentage fee determined either at the time of substitution or at the conclusion of the case.

*Lai Ling Cheng v. Modansky Leasing Co.*, 73 N.Y.2d 454, 457–58, 541 N.Y.S.2d 742, 744,

539 N.E.2d 570, 572 (1989) (emphasis added); *see also 520 East 72nd Commercial Corp. v. 520 East 72nd Owners Corp.*, 691 F.Supp. 728, 738 (S.D.N.Y.1988), *aff'd*, 872 F.2d 1021 (2d Cir.1989) ("An attorney employed pursuant to a contingent fee retainer is entitled, however, to recover in quantum meruit for the fair and reasonable value of his or her services up to the point of discharge.").

This rule differs from the one that controls fee disputes between attorneys, where the outgoing attorney may, at his discretion, elect recovery at the end of the case based on a contingency fee. *See Lai Ling Cheng*, 541 N.Y.S.2d at 744, 539 N.E.2d at 572. In a fee dispute between attorney and client, "[o]nly if the client and attorney agree may the attorney receive a fee based on a percentage of the recovery." *Cohen v. Grainger, Tesoriero & Bell*, 81 N.Y.2d 655, 658, 602 N.Y.S.2d 788, 790, 622 N.E.2d 288, 290 (1993). In determining the value of counsel's services in quantum meruit, the following factors will be relevant: "(1) the difficulty of the questions involved; (2) the skill required to handle the problem; (3) the time and labor expended; (4) counsel's experience, ability and reputation; (5) the customary fee charged for similar services; and (6) the amount involved." *Wong v. Michael Kennedy, P.C.*, 853 F.Supp. 73, 81–82 (E.D.N.Y.1994). Where an attorney is discharged with sufficient cause, the attorney has no right to recovery. *See Montgomery's Estate*, 272 N.Y. at 326, 6 N.E.2d 40 (emphasis added); *Teichner v. W & J Holsteins, Inc.*, 64 N.Y.2d 977, 979, 489 N.Y.S.2d 36, 37, 478 N.E.2d 177 (1985).

Here, the parties put in issue whether Weg & Myers was discharged for cause. Further, if Weg & Myers was discharged without cause, the client, Custom Editions, never agreed to pay Weg & Myers a contingency fee. Thus, Weg & Myers would be entitled at most to quantum meruit and an issue of fact would remain as to the reasonable value of Weg & Myers' services. Further, Weg & Myers' "reconstructed hourly bill" does not establish the reasonable value of its services. The rule in this Circuit is that attorneys may not be awarded fees without presenting contemporaneous records.

*See New York Assoc. for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983). However, some courts have held that in cases governed by state law, such as diversity cases, where the allocation of attorneys' fees is a substantive issue in the case, state law should govern the distribution. *See Banca Della Svizzera Italiana v. Cohen,* 756 F.Supp. 805, 808–09 (S.D.N.Y.1991). Under New York law, the absence of contemporaneous records will not doom a fee request, although it may result in a decreased award. *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1265 (2d Cir.1987). However, even if contemporaneous records are not required, this court cannot rely on an admittedly "speculative," "reconstructed hourly bill" to set compensation. Thus, summary judgment on Weg & Myers' claim is denied.

### D. *Ben Gruber, Inc.*

■ The next issue is whether Ben Gruber, Inc., Custom Editions' original public adjuster in this matter, can recover a fee from the proceeds. Gruber was retained on March 27, 1995 pursuant to a retainer agreement in which Custom Editions agreed to pay Gruber 10% of adjusted loss proceeds. (Gruber Aff., Ex. A) On November 29, 1995, Gruber was discharged. (Yablon Aff., Ex. C) The parties dispute whether Gruber adequately performed its services. (Gruber Aff. ¶ 11; Ginsburg Affirm. ¶ 3) Regardless, Gruber was discharged before General Star and Custom Editions reached any agreement regarding payment of Custom Editions' claim. The controlling regulation in that circumstance reads,

> 25.10 Right to compensation
>
> (a) The public adjuster shall be entitled to any compensation for any services pursuant to a compensation agreement prior to its cancellation in accordance with section 25.8 of this Part.
>
> (b) If a public adjuster performs no valuable services, and another public adjuster, insurance broker … or attorney subsequently successfully adjusts such loss, then the first public adjuster shall not be entitled to any compensation whatsoever.

> (c) Where more than one public adjuster performs valuable services for an insured, and there has not been a valid cancellation of the compensation agreement in accordance with section 25.9 of this Part, the insured shall not be obligated to pay an amount for all of such services in excess of the maximum compensation amount set by section 25.7 of the Part.

11 N.Y.C.R.R. § 25.10 (1996). The key factor in determining whether Gruber should receive compensation is whether it performed valuable services for Custom Editions. The parties vehemently dispute the value of Gruber services. Thus, genuine issues of material fact remain and this issue cannot be resolved on summary judgment.

### E. *Custom Editions and Sandra Rose Corp.*

■ The insureds, Custom Editions and Sandra Rose Corp., are entitled to a portion of any proceeds remaining after payment of those claimants with priority.

### F. *Customers Whose Personal Property was Destroyed in the Fire*

■ The final issue for resolution at this stage of the proceedings is whether the insurance policy covered damage to the personal property of others in the insured's care, custody, or control at the time of the fire. The insurance policy contains two relevant clauses. Section A.1 of the printed policy form states that the insurer will pay for "direct physical loss of or damage to" any "Covered Property" at the premises. (*Id.,* Ex. 1) The policy defines "Covered Property" as "the following types of property for which a Limit of Insurance is shown in the Declarations." (*Id.*) The policy then defines the three types of property that a policy may potentially cover: "Building," "Your Business Personal Property," and "Personal Property of Others." The policy defines "Your Business Personal Property" as property

> located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises, consisting of the following unless otherwise specified in the Declarations or

on the Your Business Personal Property— Separation of Coverage form: (1) Furniture and fixtures; (2) Machinery and equipment; (3) Stock; (4) All other personal property owned by you and used in your business; ...

(*Id.*) "Personal Property of Others" is defined as "Personal Property of Others that is: (1) In your care, custody or control; and (2) Located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises." The policy adds that "our payment for loss of or damage to personal property of others will only be for the account of the owner of the property." (*Id.*) The Declarations page—the customized page referenced in the "Covered Property" definition as determining which of the categories of property are covered—indicates that three types of property are covered under Custom Editions' policy: "Building," "Contents," and "Bus Income." (*Id.*)

Section A.5 of the printed policy form, titled "Coverage Extensions," reads,

You may extend the insurance that applies to *Your Business Personal Property* to apply to:

(1) Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

(2) Personal Property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 for each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

(*Id.* (emphasis added)).

Several parties, including customer claimants, argue that personal property of others within the custody, care and control of Custom Editions is covered under the policy. They assert that the word "Contents" on the Declaration page—the term that controls the types of property covered by the policy—is not specifically limited to "Business Personal Property," to the exclusion of "Personal Property of Others." Therefore, they argue,

both categories of property are covered by the policy under section A.1. They urge that the provision in section A.5, the coverage extension, applies only when the policy is limited specifically to "Business Personal Property."

General Star, on the other hand, argues that the coverage does not include the "Personal Property of Others" and that the coverage could be extended only to cover $2,500 of losses to such property. It asserts that the word "Contents" includes only "Business Personal Property." General Star argues that if Custom Editions had requested coverage for the property of others, it would have itemized this coverage separately on the Declarations page with its own limitation on liability. (Diorio Aff. ¶ 3) Further, General Star urges that even if the policy is ambiguous, extrinsic evidence proves that the policy did not cover "Personal Property of Others."

 An insurance contract, like any other, must be construed to effect the intent of the parties as expressed by their words and purposes. *American Home Prod. Corp. v. Liberty Mut. Ins. Co.*, 565 F.Supp. 1485, 1492 (S.D.N.Y.1983), *aff'd as modified,* 748 F.2d 760 (2d Cir.1984). In interpreting an insurance policy, "unambiguous terms are to be given their 'plain and ordinary' meaning." *State of New York v. Blank,* 27 F.3d 783, 792 (2d Cir.1994); *see also Alfin, Inc. v. Pacific Ins. Co.,* 735 F.Supp. 115, 119 (S.D.N.Y. 1990); *Mostow v. State Farm Ins. Co.,* 88 N.Y.2d 321, 326–27, 645 N.Y.S.2d 421, 423, 668 N.E.2d 392, 394 (1996) ("[T]he test to determine whether an insurance contract is ambiguous focuses on the reasonable expectations of the average insured upon reading the policy ... and employing common speech."). A court's threshold determination is whether a policy is ambiguous, *i.e.,* subject to more than one interpretation. *See Tokio Marine & Fire Ins. Co. v. McDonnell Douglas Corp.,* 617 F.2d 936, 940 (2d Cir.1980). If the policy is ambiguous, extrinsic evidence may be introduced to support a particular interpretation. *Kinek v. Paramount Communications, Inc.,* 22 F.3d 503, 509 (2d Cir. 1994). "Once extrinsic evidence is admitted, two results may ensue: (1) that the extrinsic evidence offered raises a question of credibil-

ity or presents a choice among reasonable inferences; and (2) that the extrinsic evidence offered fails to raise [a question of] credibility or such a choice." *Alfin, Inc.*, 735 F.Supp. at 119. In the former case, the matter must be submitted to the fact-finder for resolution of the issues of fact. However, in the latter—where no extrinsic evidence raising an issue of credibility or presenting a choice among reasonable inferences is offered—the court may construe the policy as a matter of law. *See Uniroyal, Inc. v. Home Ins. Co.*, 707 F.Supp. 1368, 1374–75 (E.D.N.Y.1988) (Weinstein, J.). "If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured." *McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir.1994).

Here, the policy is ambiguous as to whether it covers the "Personal Property of Others." The Declarations page, drafted by plaintiff, uses "Contents" to designate a category of covered property. The generality of the word "Contents" embraces both Custom Editions' and its customers' property. Thus, "Contents" could include both "Business Personal Property" and "Personal Property of Others," as defined in the policy. Alternatively, reading the policy as a whole, including section A.5—which creates a coverage extension for property of others—and noting the absence of three separate categories of coverage on the Declarations page, it is possible to conclude that the policy does not cover "Personal Property of Others," or at least limits such coverage to $2,500 extension.

Plaintiff's resort to extrinsic evidence in the face of this ambiguity fails to raise a genuine issue of fact necessitating a credibility determination or a choice among reasonable inferences. Plaintiff presents two pieces of evidence which it claims show that the policy does not cover "Personal Property of Others." First, plaintiff offers an interview with Robert Packer, Custom Editions' owner, which it claims demonstrates that the policy did not include such coverage. (Macrae Aff. in Opposition to Def. Motion, Ex. 2) However, this interview is not under oath and Packer does not expressly explain his understanding of the policy coverage. In fact, Custom Editions has stated under oath that it agrees with its customers' interpretation of the policy. (Packer Aff. ¶ 30; Ginsburg Reply Affirm. ¶ 4) Second, plaintiff presents Custom Editions' policy application which it claims supports its position. (Macrae Aff. in Opposition to Def. Motions, Ex. 1) However, the policy application is also ambiguous. Under the heading "SUBJECT OF INSURANCE," the application contains two entries: "Building/Pers. Property," with a limitation of $1.8 million on coverage, and "Business Inc. Incl. Ex. Exp.," with a limitation of $200,000. Once again, the phrase "Building/Pers. Property" is subject to two interpretations: it may or may not include both "Business Personal Property" and "Personal Property of Others."

The final piece of extrinsic evidence offered by plaintiff to clarify the scope of the policy is the sworn testimony of its underwriter. He states, "If Custom Editions had requested coverage for the property of others, General Star would itemize this coverage separately on the declarations page with its own limit of liability." (Diorio Aff. ¶ 3) He concludes that General Star did not intend to cover "Personal Property of Others." However, such evidence is insufficient to raise an issue of fact precluding summary judgment. "The 'subjective views of [the insurer's] officials, never communicated to [the insured] until ... litigation' cannot establish the parties' intent." *Alfin, Inc.*, 735 F.Supp. at 120 (citations omitted); *Lubrication and Maintenance, Inc. v. Union Resources Co.*, 522 F.Supp. 1078, 1081 (S.D.N.Y.1981) (Weinfeld, J.) ("Determination of the intent of the parties at the time they entered into the contract is not governed by their unexpressed subjective views...."). Plaintiff presents no evidence that it communicated this intent to Custom Editions at the time the insurance policy was issued. Rather, Custom Editions' position is that the policy included "Personal Property of Others." Thus, this evidence of intent is irrelevant in determining the proper interpretation of the policy.

 When extrinsic evidence fails to resolve the ambiguity in the policy, the contra-insurer rule—*i.e.*, all ambiguities in a policy must be interpreted against the insurer—must be applied, and the ambiguous clause must be interpreted in favor of the insured. Thus, I find that the policy included coverage for "Personal Property of Others," as defined by the policy, up to a limit, in combination with "Business Personal Property," of $300,000.

### IV.

According to plaintiff, adjustment of the claim on the policy as a result of the March 27, 1995 fire is not yet complete. Consequently, the total available for the payment of claimants cannot now be ascertained. By order of August 16, 1996, plaintiff was authorized to disburse $65,770.97 to a demolition company to demolish the premises. The order stated that plaintiff would be discharged from further liability to defendants to the extent of such payment. Further, plaintiff has paid out $667,752.46 to the mortgagees. Therefore, plaintiff is to deposit into court the $5,679.57 in losses related to building damage and $201,092 in business personal property damage that plaintiff concedes is owed on this claim, less the $5,000 deductible on the policy. Adjustment of the remaining building, business personal property, and customer claims should be completed forthwith.

As for disbursement of funds paid into court, the United States is to be paid $3,343.29, plus interest and penalties, in satisfaction of outstanding liens against Custom Editions, and Custom Editions and the United States will brief issues surrounding the remaining $17,059.59 in alleged tax liability. Disbursement of the remaining funds will await final adjustment of the insurance claim. Upon completion of the adjustment process, General Star shall deposit the remaining proceeds of the claim with the court. At that time, a trial will be held to resolve the remaining factual issues, if necessary.

\* \* \* \* \* \*

For the reasons set forth above, defendant United States' motion for summary judgment is granted and the motions for summary judgment of the other defendants are denied.

SO ORDERED: