MORGAN STANLEY GROUP, INC.,
and Morgan Stanley & Co.,
Incorporated, Plaintiffs,

v.

NEW ENGLAND INSURANCE CO. and
ITT New England Management
Co., Inc., Defendants.

No. 95 Civ. 1728 (SHS).

United States District Court,
S.D. New York.

April 13, 1998.

Opinion Adhering to Decision on
Reconsideration June 1, 1998.

James W.B. Benkard, Davis Polk & Wardell, New York City, for Plaintiffs.

Stephen C. Cunningham, Siff, Rosen & Parker, New York City, Louis G. Adolfsen, Melito & Adolfsen, P.C., New York City, for Defendants.

## ORDER

STEIN, District Judge.

This action stems from events beginning in 1985, when Morgan Stanley Mortgage Capital, an affiliate of plaintiffs Morgan Stanley Group, Inc., and Morgan Stanley & Co., Inc. (collectively, "Morgan Stanley"), was involved in the sale and purchase of participation interests in a $56 million loan from Siscorp, an Oklahoma corporation, to Fourth and Broadway Associates Ltd., made for the acquisition and renovation of a ten-story department store building in downtown Los Angeles. Morgan Stanley's role in the transaction is disputed. Morgan Stanley was previously sued by two banks which purchased participation interests in the loan, Whitestone Savings and The Banking Center; both actions settled prior to trial. Plaintiffs brought this action seeking insurance coverage pursuant to an Investment Counselors' Errors and Omissions and Fiduciary Liability insurance policy it purchased from defendant New England Insurance Co. Plaintiffs allege that defendant ITT New England Insurance Management Co., Inc., is the successor in interest to New England Insurance Co.

The parties have cross-moved for summary judgment. The crux of their dispute is whether the claims made against plaintiffs for their actions in connection with the Siscorp transaction are covered by the investment counselors' insurance policy issued by defendants.

Defendants also, in the alternative, seek an order declaring that plaintiffs' claims for coverage were made in 1986, and are covered, if at all, by policy FW000186; plaintiffs cross-move for an order declaring that the policy covering the period March 5, 1987 to March 5, 1988, policy FW000262, applies to their claims. These two policies both contain the same provision for investment counselors' coverage.[1]

The policies provide, inter alia, that the insurer, New England Insurance Co., agrees

---

1. The import of this dispute is that defendants have already paid plaintiffs for a large unrelated claim brought pursuant to the 1986 policy, so that the available remaining coverage under that policy is limited to approximately $1.75 million, while most of the $5 million of coverage under the 1987 policy remains.

to pay "[l]oss which the Insured shall become legally obligated to pay, from any claim made against the Insured during the Policy Period, by reason of any actual or alleged negligent act, error or omission committed in the scope of the Insured's duties as investment counselors." (Compl., Exh. A; Exh. 3 in Support of Defendants' Motion for Summary Judgment). The term "investment counselors" is undefined in the policies.

## I. The Cross–Motions for Summary Judgment

"Summary judgment may be granted only when the moving party demonstrates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir.1995) (quoting Fed.R.Civ.P. 56(c)).

In *Uniroyal v. Home Ins. Co.*, 707 F.Supp. 1368 (E.D.N.Y.1988), Judge Jack Weinstein provided a step-by-step analysis of the interpretation of insurance contracts at the summary judgment stage. First, as with any other contract, "if the policy is unambiguous, its interpretation is strictly a question of law for the court" and summary judgment is proper. *Id.* at 1374; *see also Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 148–49 (2d Cir.1993). Whether a contract is ambiguous is a question of law for the Court. *Brass*, 987 F.2d at 149.

If the policy is ambiguous, "the court should afford the parties an opportunity to adduce extrinsic evidence as to their intent." *Uniroyal*, 707 F.Supp. at 1374. The opportunity to produce extrinsic evidence "might result in three outcomes relevant under New York law: extrinsic evidence offered that raises a question of credibility or presents a choice among reasonable inferences; extrinsic evidence offered that fails to raise credibility or present such a choice; or no extrinsic evidence offered. New York law requires submission to the factfinder in the first situation, but a construction by the court as a matter of law in the second and third situations." *Id.*

## A. Defendants' Motion

█ Defendants seek summary judgment on the grounds that plaintiffs' actions in the underlying transaction, as a matter of law, are not covered by the policies they issued. Defendants contend that the term "investment counselors" was meant to refer to Morgan Stanley's role in providing services pursuant to a contract and for a fee, and that the term cannot reasonably encompass Morgan Stanley's role in the Siscorp transactions because plaintiffs judicially admitted in the prior litigation that they acted solely as brokers in the Siscorp transactions.

Defendants' motion for summary judgment is denied on the grounds that even if, as defendants contend, plaintiffs have judicially admitted that they acted solely as brokers in the Siscorp loan transactions, the policies could arguably still cover plaintiffs' claims since by their terms, the policies refer to "any claim made against the Insured during the Policy Period, by reason of any actual *or alleged* negligent act, error or omission committed in the scope of the Insured's duties as investment counselors." (Compl., Exh. A; Exh. 3 in Support of Defendants' Motion for Summary Judgment) (emphasis added). Defendants do not contend that plaintiffs have judicially admitted that the claims made against them by Whitestone and The Banking Center do not constitute *allegations* of negligence committed by Morgan Stanley in the capacity of investment counselor.[2]

---

**2.** Whitestone's complaint alleges, in part, that Morgan Stanley "was acting as an agent of Whitestone and by virtue of that relationship was a fiduciary owing a duty of loyalty to Whitestone" and that "Morgan Stanley undertook to provide to Whitestone certain services including, *inter alia*, to act as Whitestone's agent and to analyze whether purchasing a participation interest in the Construction Loan was a sound and prudent investment." (Ludmerer Aff., Exh. 2,

¶¶ 29, 35). The Banking Center's complaint contains causes of action for fraud, mutual mistake, innocent misrepresentation, negligence, breach of contract and unfair trade practices; it alleges that The Banking Center relied upon Morgan Stanley's representations and omissions in purchasing participation interests in the loan. (Exh. 19 in Support of Defendants' Motion for Summary Judgment, ¶ 36).

## B. Plaintiffs' Motion

Plaintiffs, in support of their cross-motion for summary judgment, contend that the policy language unambiguously covers the allegations in the Whitestone and The Banking Center cases, since both banks "claimed, with substantial factual support, that Morgan Stanley advised them to purchase an investment that went bad." (Plaintiffs' Mem. in Support of Their Motion for Summary Judgment, at 26).

In the alternative, Morgan Stanley maintains that if the Court should find the term "investment counselors" to be ambiguous, the term should be construed against the drafter, New England Insurance Co., and interpreted broadly, as urged by Morgan Stanley.

■ Plaintiffs' motion for summary judgment is also denied. The term "investment counselors" is undefined in the policies and is susceptible of at least the two interpretations offered by the parties. As noted above, the policy covers actual or alleged acts, errors, or omissions "committed in the scope of the Insured's duties as investment counselors." (Compl., Exh A; Exh. 3 in Support of Defendants' Motion for Summary Judgment). On the one hand, since the term "investment counselors" refers to a role, it would seem to imply that the policy covers actions taken in the course of such a role, as opposed to isolated instances of investment counseling. On the other hand, it is conceivable that "the Insured's duties as investment counselors" might arise in the context of roles or relationships which do not primarily consist of investment counseling.

Both parties have submitted extrinsic evidence. Defendants have submitted evidence that plaintiffs purchased the policy because it was required by a contract for the provision of investment management services to the Central States Pension Fund, which suggests that the "investment counselors" policy may have been meant to refer to counseling services performed in the course of investment management services. (Defendants' Reply Mem. in Support of their Motion for Summary Judgment, at 9–10; Exh. 5 in Support of Defendants' Motion for Summary Judgment).

Plaintiffs, however, have submitted evidence that Albert Salvatico, a Vice–President at Marsh & McLennan, the broker, wrote to Morgan Stanley that "[t]he term 'investment counseling' is undefined ... and this is done with the purpose of allowing the policy to be as flexible as possible especially when one considers the wide array of different advisory services that a firm as large as Morgan Stanley can provide. ¶ As a practical observation, the only limitations that exist are defined within the context of the policy exclusions ..." (Affidavit of Nancy B. Ludmerer, Exh. 16B). Further, Salvatico submitted in an affidavit that although he did not recall "specific communications with representatives of New England Insurance Co.," he is "confident that [he] would not have made these statements if they were inconsistent with such communications." (Ludmerer Aff., Exh. 16, ¶ 4).

■ The extrinsic evidence submitted by the parties, including but not limited to that described above, "presents a choice among reasonable inferences" and precludes granting summary judgment in plaintiffs' favor. *See Uniroyal,* 707 F.Supp. at 1374. This Court declines to apply the contra proferentem doctrine to resolve the ambiguity presented by the insurance policies themselves and the extrinsic evidence of the parties' intent. The traditional justification for the rule—that it affords a measure of protection for unsophisticated or unrepresented insureds from the harsh consequences of adhesion contracts—is lacking here. *See United States Fire Ins. Co. v. General Reinsurance Corp.,* 949 F.2d 569, 574 (2d Cir.1991).

Plaintiffs' motion is denied.

## II. The cross-motions for orders regarding the applicable policy

■ Defendants seek an order that the Whitestone and The Banking Center claims are deemed to have been made in 1986, and thus are covered, if at all, by policy number FW000186. Plaintiffs cross-move for an order that policy number FW000262, the policy for the following year, applies. Both policies, as noted above, cover "[l]oss which the Insured shall become legally obligated to pay, from any claim made against the Insured

during the Policy Period ..." (Compl., Exh. A; Exh. 3 in Support of Defendants' Motion for Summary Judgment). Both policies also provide that

. [t]he Insured shall, as a condition precedent to any right to coverage under this Insurance, give to the Company immediate notice in writing (a) of any claim made against them during the Policy Period; (b) of any circumstances which may subsequently give rise to a claim for which coverage is provided hereunder. If any claim for which coverage is provided hereunder is subsequently made against the Insured arising out of the circumstances reported under this subdivision (b), it shall be deemed to have been made during the Policy Period.

(Compl., Exh. A; Exh. 3 in Support of Defendants' Motion for Summary Judgment, at 4). It is undisputed that the actions by Whitestone and The Banking Center against Morgan Stanley were commenced in 1987, and that defendants were notified of these claims in 1987, during the FW000262 policy period. (Defendants' Mem. in Support of their Motion for Summary Judgment, at 38, 42).

Defendants' motion for a declaration that FW000186 is the applicable policy, and that FW000262 is inapplicable, is denied. Policy FW000186 does provide that if the insured notifies the insurer of "any circumstances which may subsequently give rise to a claim," such a claim will be deemed to have been made during the policy period for policy FW000186. Even if defendants are correct that plaintiffs gave notice, during the 1986 policy period, of the circumstances which gave rise to the 1987 actions by Whitestone and The Banking Center, it cannot be said as a matter of law that policy FW000186 applies, and that a subsequent policy (FW000262), which on its face clearly provides for coverage of "any claim made ... during the Policy Period," does not.

Plaintiffs' motion for an order declaring that FW000262 applies to its claim is granted. Policy FW000262 unambiguously provides that it covers "[l]oss which the Insured shall become legally obligated to pay, from any claim made against the Insured during

the Policy Period ..." As noted above, it is undisputed that the Whitestone and The Banking Center actions against Morgan Stanley were brought during the FW000262 policy period, and that defendants were notified of these claims during that policy period. The fact that a provision in a prior policy may provide for coverage when the circumstances giving rise to a claim were brought to the insurer's attention during that prior policy period does not alter the plain language of policy FW000262.

Wherefore, it is hereby ordered that plaintiffs' motion for summary judgment is denied; defendants' motion for summary judgment is denied; defendants' motion for a declaration that policy FW000186 applies to plaintiffs' claim and FW000262 does not apply is denied; and plaintiffs' motion for a declaration that policy FW000262 is the applicable policy is granted.

SO ORDERED:

### *ORDER ON RECONSIDERATION*

Upon due consideration of plaintiffs' and defendants' cross-motions for reconsideration, this Court adheres to its rulings in the Order dated April 13, 1998. Familiarity with that Order is presumed.

 In an insurance coverage action, where policy terms are ambiguous, and extrinsic evidence raises a question of credibility or presents a choice among reasonable inferences, the question of coverage must be submitted to the finder of fact. *See General Star Indemnity Co. v. Custom Editions Upholstery Corp.*, 940 F.Supp. 645, 654–55 (S.D.N.Y.1996) (" 'Once extrinsic evidence is admitted, two results may ensue: (1) that the extrinsic evidence offered raises a question of credibility or presents a choice among reasonable inferences; and (2) that the extrinsic evidence offered fails to raise [a question of] credibility or such a choice.' ... In the former case, the matter must be submitted to the factfinder.") (citing *Alfin* and *Uniroyal, infra* ); *Alfin, Inc. v. Pacific Ins. Co.*, 735 F.Supp. 115, 121 and n. 5 (S.D.N.Y.1990) ("[Contra proferentem] is applied only in cases where there is an ambiguity in some terminology of the policy which cannot be

resolved by the presentation of extrinsic evidence.... [W]e have found that there is extrinsic evidence which is subject to two reasonable interpretations. We have not, however, found the controversy is incapable of resolution by examination of the extrinsic evidence, rather, we have found that it would be improper for us to do so on summary judgment.") (citing *Uniroyal* ); *Uniroyal v. Home Ins. Co.*, 707 F.Supp. 1368, 1374 (E.D.N.Y.1988) (submission to factfinder is required where extrinsic evidence presents choice among reasonable inferences); *State v. Home Indemnity Co.*, 66 N.Y.2d 669, 671, 486 N.E.2d 827, 829, 495 N.Y.S.2d 969, 971 (1985) ("If ... the language in the insurance contract is ambiguous and susceptible of two reasonable interpretations, the parties may submit extrinsic evidence ..., and the resolution of the ambiguity is for the trier of fact.... On the other hand, if the tendered extrinsic evidence is itself conclusory and will not resolve the equivocality of the language of the contract, the issue remains a question of law for the court..... Under those circumstances, the ambiguity must be resolved against the insurer which drafted the contract.") (citations omitted); *see also Alexander & Alexander Servs., Inc. v. Lloyd's, London*, 136 F.3d 82, 86 (2d Cir.1998) ("If the language is susceptible to different reasonable interpretations, and 'where there is relevant extrinsic evidence of the parties' actual intent,' then the contract's meaning becomes an issue of fact precluding summary judgment.... Consequently, only where the court finds that the terms are unambiguous, or where no extrinsic evidence exists, may it properly grant summary judgment to one of the parties.") (citations omitted). As explained in this Court's April 13, 1998 Order,

the extrinsic evidence submitted in this case presents a choice among reasonable inferences, and therefore submission to the factfinder is required.[1]

Morgan Stanley contends that "[t]he issue on this motion, as it would be at trial, is not which interpretation of the ambiguous term 'investment counselors' is 'correct,' but whether, after the extrinsic evidence has been considered, defendants will be able to meet their burden of demonstrating that their interpretation of 'investment counselors' is the 'only fair interpretation.' " (Plaintiffs' Ltr. of May 21, 1998, at 2). Morgan Stanley then states that *Home Indemnity Co.*, 66 N.Y.2d at 671–72, 495 N.Y.S.2d 969, 486 N.E.2d 827, "follows the settled rule ... that once a contract term has been deemed ambiguous, '[i]n order for the insurer to prevail, it must demonstrate not only that its interpretation is reasonable but that it is the only fair interpretation,' " and *Uniroyal*, 707 F.Supp. 1368, 1377 (E.D.N.Y.1988), for the proposition that an "insurer bears [a] 'heavy burden of proof' because it must establish that its interpretation 'is the only construction which may fairly be placed on the [ambiguous term]' ". (Plaintiffs' Ltr. of May 21, 1998, at 2).

Plaintiff's argument is circular. The cases plaintiff cites in support of its argument are cases in which the court has already determined that contra proferentem should be applied to resolve an ambiguity. In *Uniroyal*, the court made clear that the "heavy burden of proof" borne by the insurer was part and parcel of the application of the doctrine of contra proferentem. *Uniroyal*, 707 F.Supp. at 1376–77. In *Home Indemni-*

---

1. Plaintiffs correctly point out that some Second Circuit authority suggests that contra proferentem should be applied at the summary judgment stage if the extrinsic evidence does not yield a conclusive answer as to the parties' intent. *See McCostis v. Home Ins. Co.*, 31 F.3d 110, 113 (2d Cir.1994) ("If the extrinsic evidence does not yield a conclusive answer as to the parties' intent, it is appropriate for a court to resort to other rules of construction, including the contra-insurer rule, which states that any ambiguity in an insurance policy should be resolved in favor of the insured.") (citing *Matthews v. American Cent. Ins. Co.*, 154 N.Y. 449, 456–57, 48 N.E. 751, 752 (1897)). However, reading *McCostis* in

conjunction with *Alexander & Alexander Services, Inc.*, 136 F.3d 82, and *Home Indemnity Co.*, 66 N.Y.2d at 671–72, 495 N.Y.S.2d 969, 486 N.E.2d 827 (cited in *McCostis* ), this Court concludes that the application of contra proferentem at the summary judgment stage is appropriate only where extrinsic evidence cannot resolve the ambiguity, either because it is conclusory (*see Home Indemnity Co.*, 66 N.Y.2d at 671, 495 N.Y.S.2d 969, 486 N.E.2d 827), or because it does not raise any issue of credibility or offer a choice among reasonable inferences (*see General Star Indemnity Co.*, 940 F.Supp. at 654–55; *Alfin, Inc.*, 735 F.Supp. at 121 and n. 5; *Uniroyal*, 707 F.Supp. at 1374).

*ty*, after concluding that there were no questions of credibility and no inferences to be drawn from extrinsic evidence and that therefore the interpretation of the insurance policy was a question of law for the court, the court stated that "it is not unreasonable to read the ambiguous phrase ... as a clause extending coverage," and resolved the ambiguity against the defendant insurer. Similarly, in *Primavera v. Rose & Kiernan Inc.*, 670 N.Y.S.2d 223, 224 (N.Y.A.D. 3d Dept. 1998), the other authority relied on by Morgan Stanley, the court stated that the insurer, in order to prevail, "must demonstrate not only that its interpretation is reasonable but that it is the only fair interpretation," only after it concluded that contra proferentem should be applied. Here, for the reasons set forth above and in the Order dated April 13, 1998, this Court has determined that contra proferentem should not be applied to resolve the ambiguity at issue.

Accordingly, upon reconsideration this Court adheres to its rulings in the Order dated April 13, 1998.

SO ORDERED.