MORGAN STANLEY GROUP, INC.
and Morgan Stanley & Co.
Incorporated, Plaintiffs,

v.

NEW ENGLAND INSURANCE CO.
and ITT New England Management Co., Inc., Defendants.

No. 95 CIV. 1728(SHS).

United States District Court,
S.D. New York.

Sept. 23, 2002.

James WB Benkard, Davis Polk & Wardwell, New York City, for Morgan Stanley Group, Inc., Morgan Stanley & Co. International Limited, Plaintiffs.

Louis G. Adolfsen, Melito & Adolfsen, PC, New York City, for New England Insurance Co., ITT New England Management Co., Inc., Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

STEIN, District Judge.

The U.S. Court of Appeals for the Second Circuit remanded the above-captioned action to this Court for fact-finding regarding the scope of coverage of an insurance policy held by plaintiffs. The Court concludes that the evidence submitted by the parties fails to resolve the ambiguous language of the policy. Accordingly, the Court applies the contractual rule of *contra proferentem* to construe the policy in favor of plaintiffs and enters judgment in their favor.

## I. BACKGROUND

This action arises out of the efforts of plaintiffs Morgan Stanley Group, Inc. and Morgan Stanley & Co., Incorporated (collectively, "Morgan Stanley") to obtain indemnification for the settlement of two legal claims pursuant to an insurance policy they held with defendants New England Insurance Company and ITT New England Management Company, Inc. (collectively, "New England").

Beginning in 1984, Morgan Stanley was covered by an "Investment Counselors Er-

rors and Omissions and Fiduciary Liability Insurance" policy (the "E & O policy") provided by defendants. The form policy provided that New England would indemnify Morgan Stanley for: "Loss which the Insured shall become legally obligated to pay, from any claim made against the Insured during the Policy Period, by reason of any actual or alleged negligent act, error or omission committed in the scope of the Insured's duties as investment counselors." (Adolfsen 2/1/02 Letter, Ex. B.)

In 1985, Morgan Stanley was involved in the sale and purchase of participation interests in a $56 million loan from Siscorp, an Oklahoma corporation, to Fourth and Broadway Associates Ltd., which intended to use the proceeds to acquire and renovate a department store building in downtown Los Angeles. As a result of Morgan Stanley's promotion of the transaction, Whitestone Savings, F.A. ("Whitestone") and The Banking Center ("TBC"), two savings banks located in New York and Connecticut, respectively, purchased participation interests in the loan. Before the participation interests were fully sold, it came to light that Siscorp had made a number of material misrepresentations to Morgan Stanley, TBC and Whitestone regarding the project. Because of these misrepresentations the loan could not be funded and the project failed. Whitestone and TBC subsequently filed lawsuits against Morgan Stanley for relaying false and incomplete information concerning the Siscorp investment. Both suits ultimately settled before trial. After settling the claims, Morgan Stanley sought indemnification from New England of its legal expenses and settlement costs. New England refused to pay, claiming that the Whitestone and TBC lawsuits were not covered by the policy because Morgan Stanley was not acting as an "investment counselor" in the underlying transactions.

Morgan Stanley then filed this action to compel payment of its expenses. On cross-motions for summary judgment, this Court determined that the term "investment counselor" in the E & O policy was ambiguous and denied both motions. *See Morgan Stanley Group Inc. v. New England Insurance Co.*, 7 F.Supp.2d 297, 299–300 (S.D.N.Y.1998) (*"Morgan Stanley I"*). At a two-day bench trial in October 1998, the Court considered extrinsic evidence submitted by the parties as to the meaning of the term "investment counselor" and concluded that 1) in order to act as an investment counselor Morgan Stanley had to provide an "independent analysis" of an investment to its customer; and 2) because Morgan Stanley failed to adduce evidence that it had offered an independent analysis of the Siscorp loan, it was not acting as an investment counselor with respect to these transactions, and New England was entitled to judgment in its favor. *See Morgan Stanley Group v. New England Ins. Co.*, 36 F.Supp.2d 605, 611, 613 (S.D.N.Y.1999) (*"Morgan Stanley II"*).

Morgan Stanley appealed. The U.S. Court of Appeals for the Second Circuit affirmed in part, and vacated and remanded in part. *See Morgan Stanley Group v. New England Ins. Co.*, 225 F.3d 270 (2d Cir.2000) (*"Morgan Stanley III"*). The Second Circuit agreed with this Court's conclusion that Morgan Stanley was not acting as an investment counselor with respect to the transactions underlying the Whitestone and TBC lawsuits and accordingly affirmed the judgment in favor of New England as to the TBC claim. *Id.* at 278. With respect to the Whitestone claim, the Court of Appeals found that 1) the E & O policy contained a second, unresolved ambiguity, namely whether coverage extended to "claims that allege (even contrary to fact) that errors or omissions were committed by the policy holder as an investment counselor" and 2) "the

Whitestone claim alleges (contrary to fact) that Morgan Stanley acted in the role of investment counselor." *Id.* at 275. The Court of Appeals therefore vacated this Court's judgment as to the Whitestone claim and remanded for further fact-finding as to the parties' intent.[1]

In *Morgan Stanley II*, this Court recited the procedure applied in interpreting an ambiguous term in an insurance policy:

> Once a court determines that, as a matter of law, a term of an insurance policy is ambiguous, "it may accept any available extrinsic evidence to ascertain the meaning intended by the parties during the formation of the contract." *Alexander & Alexander Servs. v. These Certain Underwriters at Lloyd's, London,* 136 F.3d 82, 86 (2d Cir.1998) (citation omitted); *Hartford Accident & Indem. Co. v. Wesolowski,* 33 N.Y.2d 169, 171, 305 N.E.2d 907, 350 N.Y.S.2d 895 (1973). Where extrinsic evidence is conclusory or does not shed light upon the intent of the parties, a court may resort to the *contra proferentem* rule of contract construction and construe any ambiguities in the contract against the insurer as a matter of law. *See McCostis v. Home Ins. Co. of Ind.,* 31 F.3d 110, 113 (2d Cir.1994); *State v. Home Indem. Co.,* 66 N.Y.2d 669, 671, 486 N.E.2d 827, 495 N.Y.S.2d 969 (1985).

*Morgan Stanley II,* 36 F.Supp.2d at 609. In vacating that decision as to the Whitestone claim, the Second Circuit instructed that "if on remand the extrinsic evidence sheds no light on the ["alleged" conduct] ambiguity or 'does not yield a conclusive answer,' the district court should apply contra proferentem" since New England drafted the policy and Morgan Stanley did

not negotiate the coverage terms. *Morgan Stanley III,* 225 F.3d at 280 (citing *McCostis,* 31 F.3d at 113).

## II. FINDINGS OF FACT

As noted above, the E & O policy extends coverage to "[l]oss which the Insured shall become legally obligated to pay . . . by reason of any actual or alleged negligent act, error or omission committed in the scope of the Insured's duties as investment counselors." New England maintains that the word "alleged" modifies "act, error or omission," not "investment counselors," so that the policy provides coverage for an alleged error or omission, but only if the alleged error or omission occurred while the insured was acting as an investment counselor. Morgan Stanley posits that "alleged" refers to the entire clause, and therefore extends to errors or omissions committed while the insured is performing a role that, as described by the claimant in the underlying action, would make the insured an investment counselor.

On remand, the Court directed the parties to submit extrinsic evidence in support of their respective interpretations of the clause. Morgan Stanley referred the Court to several items of evidence already in the record. First, Morgan Stanley's then-Risk Manager James Elliot, who obtained the errors and omissions policy, testified at the October 1998 trial that Morgan Stanley acquired the insurance in order to "cover losses that might arise from allegations or actually giving negligent investment advice to clients." (T. Tr. at 202, annexed to Benkard 2/01/02 Letter as Ex. B.) Second, in a June 2, 1987 letter to broker Marsh & McLennan and a nearly identical October 1, 1987 letter to Mor-

---

1. The Second Circuit also remanded for further factfinding with respect to whether the Whitestone claim was covered by the 1986 policy, as New England contended, or the 1987 policy, as Morgan Stanley urged. *Mor-*

*gan Stanley III,* 225 F.3d at 281. Morgan Stanley subsequently conceded that any recovery would be limited to the 1986 policy. (*See* Benkard 1/16/01 Letter at 1, annexed to Benkard 2/01/02 Letter as Ex. A.)

gan Stanley concerning claims arising from the Siscorp transaction, New England wrote that "the complaint does not appear to contain any allegations which would bring the claim within the insuring agreements of the policy. There is no allegation that [Morgan Stanley] committed any negligent act in the scope of its duties as investment counselor." (Benkard 2/01/02 Letter, Exs. C, D.) Finally, in a July 19, 1989. letter to Morgan Stanley, New England's outside counsel wrote that "Morgan Stanley is not alleged [in the Whitestone complaint] to have acted as an investment adviser or investment counselor. The [Whitestone] pleading merely alleges that Morgan Stanley made certain representations in connection with a sale." (*Id.*, Ex. E.) According to Morgan Stanley, New England "admitted in all three letters that if allegations of investment counseling were made, the policy would cover such claims." (*Id.* at 8.)

New England offered the affidavit of Daniel M. Bianca, an attorney and former partner in the law firm of Mendes & Mount in New York City. Bianca affirms that for more than 20 years, he was involved in the drafting of insurance policies for New England and other companies, including the E & O policy at issue here. (Bianca Aff. ¶¶ 2–3, annexed to Adolfsen 2/1/02 Letter as Ex. F.) In his capacity as drafter of the policy, Bianca discussed the policy's intent with New England representatives and responded to questions about coverage from brokers representing policyholders. (*Id.* ¶¶ 4–5.) In 1980, at the request of these brokers, Bianca added the words "actual or alleged" to the coverage clause so that the policy provided coverage for "any actual or alleged negligent act, error or omission committed in the scope of the Insured's duties as Investment Counselors." (*Id.* ¶¶ 8–9.) Bianca does not recall that either he or the brokers intended that the additional language

"eliminate the requirement that the actual or alleged negligent, act, error, or omission had to be 'in the scope of the Insured's duties as Investment Counselors' in order to be covered under the policy." (*Id.* ¶¶ 10–11.) Bianca further states that he does not specifically recall discussing his understanding of the clause with brokers from Marsh & McLennan or other representatives of Morgan Stanley, but that he might have done so. (*Id.* ¶¶ 12–13.) Based on the Bianca Affidavit, New England conjectures that "it is likely under the circumstances that Mr. Bianca spoke with a Morgan Stanley broker representative ... about the 'actual or alleged' policy language." (Adolfsen 2/1/02 Letter at 12.)

## III. CONCLUSIONS OF LAW

The Court concludes that Morgan Stanley's interpretation of the coverage clause, while quite broad, is not unreasonable. Further, the extrinsic evidence described above fails to resolve the ambiguity in the clause. Elliot's testimony that he believed the policy was intended to cover "allegations or actually giving negligent investment advice" is not dispositive and in any event is as ambiguous as the policy language itself. While the letters lend some support to Morgan Stanley's position, the Court does not agree that New England thereby conceded that the policy extended coverage to alleged investment counseling. The letters could just as easily be construed to mean that New England's representative found that the underlying claims did not even allege investment counseling and *a fortiori* could not fall within the policy limits, without reaching the issue of whether Morgan Stanley actually was acting as an investment counselor. Similarly, Bianca's testimony that he "may have" spoken to someone who represented Morgan Stanley at some point in the past

regarding his interpretation of the "actual or alleged" language is far too speculative to be given any weight in determining the parties' intent at the time of the contract.

Having concluded that the extrinsic evidence does not clarify the coverage issue, this Court follows the instruction of the Court of Appeals and applies the *contra proferentem* rule in favor of the insured, Morgan Stanley. *See Morgan Stanley III,* 225 F.3d at 280; *McCostis,* 31 F.3d at 113; *Home Indem. Co.,* 66 N.Y.2d at 671, 495 N.Y.S.2d 969, 486 N.E.2d 827. Accordingly, the Court construes the policy to include coverage for claims alleging investment counseling. Since the Whitestone claim alleged that Morgan Stanley acted as an investment counselor, *see* 225 F.3d at 275, Morgan Stanley is entitled to judgment in its favor on the Whitestone claim.

## IV. CONCLUSION

Because the extrinsic evidence provided by the parties has failed to resolve the ambiguity in the E & O policy coverage clause, the Court construes the policy language to include coverage for claims alleging investment counseling, such as the Whitestone claim. The Clerk of Court is directed to enter judgment for plaintiffs with respect to the Whitestone claim.

SO ORDERED.